(No. 54984.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD BROWN, Appellee.

*Opinion filed September 17, 1982.—Rehearing denied November 24, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Melbourne A. Noel, Jr., and Mark L. Rotert, Assistant Attorneys General, of Chicago, and Marcia B. Orr, Joel A. Stein, Casimir J. Bartnik, Michael E. Shabat, Joan S. Cherry, and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, of the Office of the State Appellate Defender, of Chicago (Fe Fernandez, of Evanston, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

On August 27, 1979, the circuit court of Cook County granted a motion by the defendant, Ronald Brown, to dismiss an indictment against him for the murder of Tony Williams. The motion alleged post-indictment delay that violated defendant's right to a speedy trial. On appeal, the dismissal of the murder indictment was unanimously affirmed. 94 Ill. App. 3d 609.

The issues before this court are: (1) Did a *mandamus* proceeding on a separate charge toll the statutory period of limitations for trial in the Williams case? (2) Did the trial court err by denying the State's motion for a continuance and dismissing the indictment on the 158th day of the 160-day statutory term?

A rather detailed recitation of the facts is necessary to portray the sequence of events leading to dismissal of the indictment. On April 29, 1976, defendant was arrested for the January 10 murder of Tony Williams. He remained in custody until May 18, 1977, when he was released on $25,000 bond. During this period, defendant did not seek to advance trial on the charge. From the date of his arrest to November 20, 1977, the case was continued 24 times.

On November 20, 1977, defendant was arrested and charged by information with the armed robbery of Michael Trice. He remained in custody until March 31, 1978, when he was released on $5,000 bond. From November 20, 1977, to July 3, 1978, the Williams murder case (for which the bond remained in effect) was continued 12 more times.

On July 3, 1978, defendant was arrested and later charged with the aggravated kidnaping, armed robbery, and murder of Charles H. McGee. Defendant was never admitted to bail on the three McGee charges and has been incarcerated since July 3, 1978.

On August 7, 1978, the trial court revoked defendant's bond on the Williams murder charge, and the case was continued by agreement until August 28, 1978. In the meantime, on August 8, 1978, defendant pleaded guilty to the Trice armed robbery and was sentenced to six years' imprisonment.

On December 11, 1978, trial commenced on the McGee charges. On December 22, following a four-day bench trial, defendant was found guilty of the aggravated kidnaping, armed robbery, and murder of Charles H. McGee. The State had requested a death penalty hearing on the McGee murder and on January 29, 1979, the trial court held the Illinois death penalty statute unconstitutional. The State then filed a petition for writ of *mandamus* before this court. On November 21, 1979, this court vacated the trial court's order and remanded the cause for a sentencing hearing. (*People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, *cert. denied* (1980), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603.) On May 7, 1980, defendant was sentenced to 80 years on the murder count, 30 years on the armed-robbery count and 15 years on the aggravated-kidnaping count, the sentences to run concurrently.

From August 7, 1978, to January 29, 1979, the Wil-

liams murder case was continued 19 additional times. On January 29, 1979, defendant for the first time demanded trial in the Williams case. On the State's motion, the trial court continued the cause to March 19, 1979, when a trial date was to be set. On this date defendant's trial counsel did not appear and defendant was represented by an associate of his trial counsel. The case was then continued by agreement to March 22, 1979.

On March 22, the State informed the trial court it was still attempting to locate witnesses in the Williams case. In asking for a continuance, the State argued that as a result of the agreed continuance from March 19 to March 22, the statutory period of limitations would expire on July 19 (119 days from that time). The cause was then continued to July 19, 1979. On that date, the State argued for the first time that the statutory term was not running in the Williams case inasmuch as a final disposition had not been rendered on the McGee case. The State contended that section 103—5(e) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(e)) allowed it 160 days from the final judgment in the McGee case, which had not yet been rendered.

Alternatively, the State argued that the statutory term was "160 days from March 22nd, 1979 [and] would end August 27th, 1979" (which was actually 158, rather than 160, days later). The State again requested a continuance to locate the missing witness in the Williams case. The trial court continued the case until the next day for a hearing on the State's efforts to locate the witness.

On July 20, after hearing testimony from two investigators for the State, the trial court concluded that the State had not exercised due diligence in attempting to locate the witness. The State reiterated its earlier argument that the 160-day statutory term in the Williams

case began to run when defendant's attorney demanded trial and would not expire until August 27, 1979. On the State's motion, the trial court continued the case to August 27, 1979. On that date, the trial court denied the State's motion for another continuance, concluding that the State had not exercised due diligence and that it had not established any basis for the court to believe that the sought-after witness would be produced within a definite or a reasonable time. The judge then dismissed the indictment in the Williams case based upon the sixth and fourteenth amendments to the United States Constitution.

The appellate court affirmed, concluding that dismissal of the indictment was proper under section 103—5(e) of the Code. It is the appellate court's interpretation of that statute that is before us on appeal.

Section 103—5(a) of the Code provides that a person shall be tried by a court within 120 days from the date he is taken into custody. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a).) Under section 103—5(b), if a person is released on bail or recognizance, he shall be tried within 160 days of his demand for trial. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b).) Section 103—5(e) provides:

"If a person is simultaneously in custody upon more than one charge pending against him in the same county *** he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subparagraphs (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered ***; if either such period of 160 days expires without the commencement of trial of *** any of such remaining charges thus pending, such charge or charges shall be dismissed and barred for want of prosecution unless delay is occasioned by the defendant *** or by an interlocutory appeal; Provided, however, that if the court

determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." Ill. Rev. Stat. 1975, ch. 38, par. 103—5(e).

The appellate court concluded, and it is not here in dispute, that at the time defendant pleaded guilty to the Trice armed robbery on August 8, 1978, he was simultaneously in custody on all three charges. Consequently, section 103—5(e) is applicable and the 160-day limitations period first commenced running on August 8, 1978. However, offenses allegedly committed prior to March 1, 1977, are governed by case law holding that any delay caused by defendant will start the statutory period anew from the date to which the cause has been continued. (See *People v. Donalson* (1976), 64 Ill. 2d 536, 540; *People v. Zuniga* (1973), 53 Ill. 2d 550, 553; *People v. Lee* (1969), 44 Ill. 2d 161, 166.) As the appellate court determined, the three-day, by-agreement, continuance on March 19, 1979, delayed the commencement of the 160-day statutory term to March 22, 1979.

The State argues that section 103—5(e) should be construed to allow an interlocutory appeal in one case to toll the 160-day period in another simultaneously pending case. The State asserts, based on this argument, that the writ of *mandamus* it filed in the McGee case on January 29, 1979, is in the nature of an interlocutory appeal, which tolled the 160-day statute of limitations in the Williams case. According to the State, the 160-day limitations period in the Williams case was tolled until May 7, 1980, when sentence was pronounced in the McGee case.

This court has often held in statutory construction cases that legislative intent is to be derived primarily from a consideration of the legislative language itself. (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d

365, 371; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) In construing a statute, the language should be given its plain and ordinary meaning. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139. See *People v. Dednam* (1973), 55 Ill. 2d 565, 568.) As quoted above, section 103—5(e) provides that a person "shall be tried upon *all of the remaining charges thus pending* within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered \*\*\*; \*\*\*." (Emphasis added.) The independent clause that follows the semicolon then indicates that "if \*\*\* such period of 160 days expires without the commencement of trial of \*\*\* any of such remaining charges thus pending, such charge or charges shall be dismissed \*\*\* unless delay is occasioned by \*\*\* an interlocutory appeal." Ill. Rev. Stat. 1975, ch. 38, par. 103—5(e).

Nowhere does the statute provide that an interlocutory appeal filed in one of the simultaneously pending cases tolls the limitations period in another one of those cases. As defendant's brief points out, the legislature could have easily added the phrase "in other pending cases" after the words "interlocutory appeal." Rather, the legislature used the identical language for delineating exceptions for delay that was used in sections 103—5(a) and (b), which apply to only one case. In those sections, a case must be brought within the statutory period unless the delay is occasioned by an interlocutory appeal in *that* case. Moreover, if a defendant is in custody for only two offenses, the exception in section 103—5(e) extending the time past 160 days from the judgment in the first case necessarily refers to an interlocutory appeal in the second case—the case in which the time period is not met. There is no language in the statute to imply a different interpretation when more than two offenses are involved. It is consistent with the overall statutory language to conclude that the legislature chose to

reduce the State's burden when more than one offense is involved by giving the State 160 days, rather than 120, from the first judgment.

In this case, as observed by the appellate court, there was no relationship demonstrated between the *mandamus* action in the McGee case and the delay in the Williams case. Indeed, the State reiterated that its delay in bringing defendant to trial on the Williams murder charge was due solely to its failure to locate and contact a witness. Under the facts and circumstance of this case, we hold that the *mandamus* proceeding in the McGee case did not toll the 160-day limitations period of section 103—5(e) in the Williams case. We note parenthetically that this interpretation of section 103—5(e) presents no conflict with our Rule 604(a)(4) (73 Ill. 2d R. 604(a)(4)) cited by the State.

The State also contends that the statutory period was tolled because the *mandamus* action in the McGee case was attributable to defendant. That exception is delineated in section 103—5(e), along with the interlocutory-appeal exception. However, by the same reasoning, there is nothing in the statute to indicate that a delay attributable to a defendant in a simultaneously pending case shall toll the statute in a separate case, particularly where the delay in one case is unrelated to the delay in bringing the second case to trial. Irrespective of the party to whom the *mandamus* is properly charged, that delay occurred in the McGee case and was not demonstrated to be related to the delay in bringing Williams to trial. Consequently, that exception does not operate to toll the term in the Williams case.

The State next argues that even if the term is not tolled by the *mandamus* action in the other case, the trial court improperly dismissed the indictment two days before the end of the 160-day period. The State also argues that the trial court abused its discretion when it denied the State's motion for a continuance at the time of dismissal.

As indicated above, the 160-day term commenced on

March 22, 1979. The State is correct in observing that the dismissal of the indictment in the Williams case on August 27, 1979, occurred two days before the expiration of the term. However, as the appellate court pointed out, the source of the miscalculation was the State. The State on two separate occasions informed the trial court that the 160-day term would end on August 27. There is nothing in the record to indicate that either party was aware of the two-day discrepancy. Nor, as the appellate court found, was there any bad faith or subterfuge in connection with this error. Moreover, the State never contended, nor does the record reveal, any realistic possibility that the witness for whom the State was looking could have been found in two days. This court has repeatedly held that section 103—5 is to be construed liberally so as to give effect to the constitutional right to a speedy trial (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8) and each case is to be decided on its own facts (*People v. Pearson* (1981), 88 Ill. 2d 210, 216; *People v. Richards* (1980), 81 Ill. 2d 454, 459-60; *People v. Fosdick* (1967), 36 Ill. 2d 524, 528-29). We conclude that, under the facts of this case, the trial court's dismissal of the Williams indictment on the 158th day of the term did not constitute reversible error.

With respect to the trial court's denial of the State's motion for a continuance on August 27 to locate a witness, it is settled that granting additional time is a discretionary matter. The trial court's determination is reversible if there is an abuse of that discretion, which depends on the facts and circumstances at the time of the request. (*People v. King* (1977), 66 Ill. 2d 551, 557; *People v. Arndt* (1972), 50 Ill. 2d 390, 393; *People v. Solomon* (1962), 24 Ill. 2d 586, 589, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94).) Under section 103—5(e), the court may continue the cause if it "determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to

believe that such evidence may be obtained at a later day."

In this case, two investigators testified at the July 20, 1979, hearing about their efforts to locate the State's witness. One investigator stated that in February and March 1979 he went to the witness' last known address, where he spoke to the landlord, that he went to her mother's address, and that he checked the post office and the Department of Public Aid for some lead to the witness' whereabouts. He did not recall performing any investigation with respect to this case after March. The other investigator testified that once, on July 18 (one day before the hearing), he attempted to locate the witness at her last known address, where he spoke to a neighbor, at her mother's address, and through the Department of Public Aid. He spent a total of approximately 2½ hours. His testimony indicated, as noted by the trial judge, that this was the only investigation performed in the 119 days from March 22, 1979 (the date of the previous continuance), until July 19. Notwithstanding his belief that the State had not exercised due diligence, at the conclusion of the July 20 hearing the trial judge continued the case to August 27, the date on which the State contended the term would run. In so doing, the judge stated: "[A] reasonable time should be afforded so there will be no question but that all the reasonable opportunities which may be considered to be possible, reasonably have been afforded the State to present some witness before this Court ***."

On August 27, the State again requested a continuance to locate the witness. The only information the State could produce about her whereabouts was that she was reportedly somewhere in Mississippi and that the State believed it could find her. Thus, after several continuances and approximately six months in which to investigate, the State had not located its witness and even, in requesting another continuance, told the court:

"Judge, all we can do is go out and look for that witness and try to get her. I can't give you a date. I can't

can't give you a time. I can't tell you we have a hundred percent chance of getting her, ninety-nine percent, eighty percent or zero percent. All I can say to this Court, as I would say to any other court or any other judge, is that we are asking for a continuance for the purpose of getting that witness who we believe we have an opportunity to find and bring in. That's all I can say."

The record in this case reveals that at the time of the State's final request for a continuance, there was more than sufficient basis for the trial court's conclusions that the State did not exercise due diligence and that the State did not establish a sufficient basis for the court to believe the witness would be produced within a reasonable time. Accordingly, the trial court did not abuse its discretion in denying the State's motion for a continuance on August 27, 1979.

For the above-stated reasons, the judgment of the appellate court, affirming the dismissal by the trial court of the Williams murder indictment, is affirmed.

*Judgment affirmed.*