THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD HARRELL, Defendant-Appellant.

Fourth District    No. 4—82—0181

Opinion filed February 3, 1983.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant was charged by information on September 24, 1981, with four counts of murder. After jury trial, a verdict was returned against the defendant on all four counts on February 5, 1982. On March 31, 1982, defendant was sentenced to a term of imprisonment of natural life on the third count for causing the victim's death while committing armed robbery. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3).) The judgments on the other three alternate counts were vacated.

Defendant contends that the trial court erred by barring impeachment of the prosecution's principal witness with a prior juvenile conviction for burglary and by depriving defendant of a fair trial when it

excluded a defense witness. We affirm.

The issues presented here require only a sketch of the evidence presented at trial. Defendant and his wife's brother, Drew Cunningham, were in a tavern known as Nashville City located in Quincy, Illinois, in the early morning of September 19, 1981. At approximately 2 a.m., they left the tavern in the company of the victim, Earl Bowen. Bowen was later found murdered on the outskirts of Quincy. Conflicting testimony was given concerning the details of the departure from the tavern and the events of the following 45 minutes. In short, defendant testified that he left the tavern with Bowen, but outside they split up. Defendant spent the next 45 minutes wandering around downtown Quincy and then he headed back to where he had parked his truck. He did not know where Cunningham was until he saw him drive up and park his (defendant's) truck.

According to Cunningham's version of the events, defendant, the victim, and Cunningham left the tavern together in defendant's truck. Defendant drove the truck to the outskirts of town where the victim was beaten with a metal bar by Cunningham, shot by defendant, and then robbed. The victim was left and the two of them returned to town.

Other than the fact that Bowen and defendant exited the tavern together, and one witness saw defendant and Cunningham drive up and park in defendant's truck approximately 45 minutes later, the only testimony connecting defendant to the murder was that given by Cunningham. Cunningham was allowed to plead guilty to a single count of armed robbery and his sentencing had not yet taken place at the time of defendant's trial. The trial court granted the prosecution's motion *in limine* barring the introduction for impeachment purposes of Cunningham's juvenile record. Defendant claims that his rights to confront a witness against him was thus unconstitutionally impaired.

■ A defendant's right to confront the witnesses against him is fundamental to a fair trial. (*Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065.) The right to cross-examine is an essential part of the right to confront. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.) Furthermore, *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852, indicate that a juvenile witness may be impeached by examination regarding pending juvenile matters or matters for which the witness is under the continuing supervision of a juvenile court. The rationale is that a defendant has the right to show possible bias on the part of a witness against him. That is, he may show that the juvenile witness is predis-

posed to testify favorably for the State in order to receive lenient treatment on the juvenile matters.

■ The juvenile adjudication that was sought to be introduced here was apparently for a burglary in California which occurred approximately 1½ years prior to the murder. There is nothing in the record to indicate that Cunningham expected to receive any leniency from California authorities because of his cooperation with the prosecution here, and in fact, the prosecutor stated that he had had no conversation with any California authorities on that possibility. We recently held in *People v. Lindgren* (1982), 111 Ill. App. 3d 112, that *Davis* and *Norwood* have no application where, as here, there has been no showing that the witness might receive favorable treatment in a juvenile proceeding because of his testimony. In contrast to impeachment by showing potential bias, there is no constitutional right to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications. (See *Davis v. Alaska* (1974), 415 U.S. 308, 321, 39 L. Ed. 2d 347, 356, 94 S. Ct. 1105, 1112 (Stewart, J., concurring); *People v. Holsey* (1975), 30 Ill. App. 3d 716, 332 N.E.2d 699.) We find the *Lindgren* holding controlling.

■ As a further basis for our holding we note that the court in *People v. Baugh* (1981), 96 Ill. App. 3d 946, 951, 422 N.E.2d 166, 171, stated:

"The issue under the confrontation clause is whether the jury has been made aware of adequate factors to determine whether a witness is worthy of belief, not whether any particular limitation has been placed upon defendant's ability to cross-examine a witness or whether the jury has knowledge of any specific fact. [Citations.] Thus, if it appears from the entire record that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited, on cross-examination, from pursuing other areas of inquiry. [Citation.]"

The jury here was made aware of Cunningham's part in the crime, the fact that he was only charged with armed robbery in exchange for his testimony, and that he would not be sentenced until after his testimony in defendant's trial. Defendant's constitutional right to confront Cunningham was not impaired.

■ Finally, the determination of whether a juvenile adjudication will be allowed in evidence to impeach a witness is left to the sound discretion of the trial judge. The standard to be used is from proposed Federal Rule of Evidence 609(d) (51 Fed. R. Dec. 391), which allows

such impeaching evidence if "conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence." (See *People v. Puente* (1981), 98 Ill. App. 3d 936, 424 N.E.2d 775.) In making its ruling, the trial court stated that the facts here presented a close question. We think it would be a better practice to allow impeachment by juvenile adjudications when, as here, a witness is critical to the State's case. (See *Holsey*.) However, absent the impairment of any of defendant's constitutional rights and given these facts, we cannot say that the trial court abused its discretion.

Defendant next contends that he was deprived of a fair trial because the court refused to allow him to call a "surprise" witness. At 2:50 p.m. on February 3, eight days after trial had begun and immediately before the defense rested, defense counsel notified the court of the discovery of a new witness, Virginia Murphy. The court was told that defendant had always maintained that the witness existed, but her identity was unknown because of a "misapprehension" on the part of defense counsel. The "misapprehension" was never explained. The court was further told that the identity of the missing witness was discovered on February 1; that on February 2 a detective agency was hired to locate her in Florida; and that on the morning of February 3 she was located and talked by phone with defendant's attorneys.

They related that in the conversation, Murphy said that she had worked at Nashville City the morning of the murder and left work with an unknown male companion between 2:30 and 2:45 a.m. As they were crossing a street, a pickup truck with lights mounted on the hood turned the corner and almost struck them. Her companion made some kind of comment about the driver, as did a man who was standing on the other corner. She gave a description of that unidentified man, which description was consistent with defendant's appearance. She also said she saw the same man later that morning at Smiley's Restaurant in downtown Quincy.

Defendant had earlier testified that when he was returning from his 45-minute hiatus to where he thought his truck was parked, he saw Cunningham drive the truck around the very same corner, almost strike a man and a woman, and heard the man make a comment to the woman. According to defendant, when this occurred he was on the same corner as Murphy's unidentified man, but defendant did not testify that he made any comment to Murphy about the driver. Defendant's truck had snowplow lights mounted on the hood, and

defendant did testify that he was in Smiley's Restaurant later that morning.

Defendant requested a continuance to allow Murphy to travel from Florida and testify at the trial. Defendant maintained that Murphy's testimony would corroborate his story that he was not with Cunningham between 2 a.m. and 2:45 a.m. when Bowen was murdered. The trial court refused to allow Murphy to be called because the prosecution had not been apprised of defendant's intent to call her as a witness as required by Supreme Court Rule 413(d)(i) (87 Ill. 2d R. 413(d)(i)). The court further noted the facts that it was not shown that Murphy would identify defendant as the man on the corner and that defendant had not testified he made a comment to the woman made Murphy's testimony of doubtful relevancy.

Supreme Court Rule 413(d)(i) requires a criminal defendant to disclose in discovery the name of each person whom he intends to call as a witness. Supreme Court Rule 415(g) (87 Ill. 2d R. 415(g)) authorizes the trial court, among other sanctions, to exclude evidence related to a discovery violation. Such exclusion is within the sound discretion of the trial court, whose discretion will only be reviewed upon a party's showing of prejudice. *People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360.

The prosecution was not notified of the existence of Murphy until February 2, nor of defendant's intent to call her as a witness until February 3. Defendant maintains that he did not violate Rule 413(d)(i) because he did not "intend" to call her until February 3. There is support for defendant's position that he did not violate Rule 413(d)(i). (See *People v. Pozzi* (1976), 42 Ill. App. 3d 537, 356 N.E.2d 186; *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274.) However, we do not decide that issue inasmuch as we affirm the trial court's ruling on the ground that the denial of the continuance was within its sound discretion.

"The granting or denial of a continuance to obtain evidence or procure a witness is within the discretionary power of the trial court. [Citation.] When reviewing the exercise of the court's discretion, this court must determine whether defendant had acted diligently in his attempts to obtain the evidence [citation], whether the evidence would be material to the case and might affect its outcome [citation], and whether defendant has been prejudiced in his right to a fair trial. [Citation.]" (*People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57.)

Defendant was charged in September and the trial was not held until over four months later. As the trial court stated, "if [Murphy] was find-

able yesterday or the day before, she could have been found four months ago." The materiality of Murphy's proposed testimony hinged on its placement of defendant on the street corner rather than in the truck as it was returning to town. (Even then it is not clear that defendant's participation in the murder would be necessarily precluded.) Defense counsel admitted that it was unknown whether Murphy would identify defendant as the unknown man on the corner, and defendant's version of events differed in an important detail from Murphy's. It is quite possible that defendant viewed the incident between Murphy and the truck from the driver's seat of the vehicle.

The trial court was faced with the dilemma of a considerable delay of unknown extent in a complicated trial that after eight days was near its close, because a snowstorm made it uncertain as to how soon Murphy would arrive from Florida, and upon her arrival the State would demand its right to investigate her vague story and search for her unknown male companion. All this for testimony that was of doubtful relevancy. While we think that given the seriousness of the offense and the peculiarities of the facts, it might have been better for the court to have taken a short continuance, we cannot say that the trial court abused its discretion in denying the same.

In any event, subsequent to trial, there was introduced into the record a sworn affidavit by Murphy in which she stated that after meeting (subsequent to the trial) with the police, defendant's counsel, and the defendant, she was certain that defendant was *not* the unidentified man on the corner who made the comment to her. We conclude that the excluded testimony would not have affected the outcome of the case, and defendant was not prejudiced in his right to a fair trial by the exclusion of Murphy as a witness.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.