THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GARY FONVILLE, Defendant-Appellant.

Fourth District   No. 4—86—0745

Opinion filed July 21, 1987.

Arthur M. Lerner, of Greaves, Lerner & Kirchner, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Gary Fonville was convicted following a jury trial of two violations of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*): unlawful possession with intent to manufacture a controlled substance, and unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401). The circuit court of Champaign County sentenced defendant to seven years' imprisonment.

Defendant appeals, raising four alleged points of error: (1) the denial of his motion to suppress evidence; (2) the refusal by the trial court to give a jury instruction defining the included offense of possession; (3) the allowing in of rebuttal witness testimony while refusing to give a limiting instruction regarding that testimony; and (4) the denial of defendant's request for additional time to produce a witness.

We find none of the defendant's arguments persuasive and we affirm.

██ ■ Defendant first contends the evidence in this case evinces an unreasonable "no-knock" entry without a prior announcement of authority and purpose. Defendant further asserts no exigent circumstances existed to excuse such an entry. He believes evidence obtained from the subsequent search is therefore constitutionally tainted, and asks we reverse the trial court's denial of his motion to suppress.

A search warrant was issued on February 6, 1986, by the circuit court of Champaign County. The complaint requesting issuance of a warrant indicated the apartment in question had been under surveillance for a period of at least one week. A "steady stream of individuals" was seen entering and exiting the premises. The average length of stay was less than 10 minutes. Two police informants had gone into the apartment and purchased heroin from the occupants. One informant observed a revolver in the apartment on a bed next to a table on which 30 to 40 foil packages purportedly containing heroin were noted. The complaint also recited the prior criminal records of certain persons observed in the premises, including convictions for battery (the defendant), theft, obstructing a police officer, and two drug-related offenses. The complaint concluded force would in all probability be required to gain entry in order to secure the safety of all persons involved and to prevent the destruction of evidence.

Several law enforcement officers testified at the suppression hearing regarding the procedures actually employed in entering the apartment in question on February 6, 1986. Officer Wayne Roosevelt of the Champaign police department testified officers were instructed at a presearch meeting this was not to be a "no-knock" search. Officers were to announce their presence before attempting entry. Michael Metzler of the Inter-Agency Task Force was given the responsibility of announcing the search to the occupants of the apartment. A telephone call would also be made to the apartment prior to entry.

Roosevelt recalled Metzler yelled, "[P]olice, open the door," into a bullhorn at the scene while running alongside the apartment building with SWAT team members. Officers then used a battering ram to force the door open. Roosevelt stated the officers also announced their presence as they entered.

Metzler testified he did not recall precisely what words he uttered into the bullhorn. The gist of his announcement, he stated, was to identify police officers as being present and to order the occupants to open the door. He stated he made the announcement as SWAT team members approached the apartment, and he was able to complete the announcement before the door was forced open. Metzler also recalled

a number of apartment doors in the building were opened and people were looking out as a result.

James Davis, chief investigator for the Champaign County State's Attorney's office, stated he telephoned the apartment to announce the presence of police. He made the call from a portable telephone while parked about one-half block away. Davis stated the phone rang approximately 10 times as the SWAT team gained entry, but no one in the apartment answered. One officer testified the phone was ringing in the apartment when they secured the area, and he told the occupants not to answer it. Davis then went immediately to the residence.

A videotape taken of the entry and shown to the court is inconclusive. The tape shows several officers moving alongside the apartment building. Another officer walking along with them, presumably Metzler, is carrying a bullhorn. As officers readied themselves outside the door of the apartment in question, the other officer lifted the bullhorn closer to his mouth. SWAT team members then swung a battering ram once as if to measure the door or gain momentum, and a second time to break it down. Police then entered the premises.

Because there is no accompanying audio portion on the tape, it cannot be ascertained what, if anything, was announced. It is also difficult to gauge how much time was afforded the occupants to respond before the door was forcibly opened. Our review of the videotape indicates the announcement could have been made as Metzler moved alongside the apartment building with SWAT team members. It also could have been made a few seconds later as he raised the bullhorn closer to his mouth while in a more stationary position. The tape was shot from an angle which precludes an exact appraisal of the sequence of announcement and entry. The tape is not much help in measuring the elapse of time between announcement and entry.

The trial court denied the motion to suppress. The court assumed the entry was a "no-knock" entry, and determined the totality of exigent circumstances vindicated such an entry. The court found the information presented to the circuit court when the warrant was issued, including the documented existence of drugs and a handgun on the premises, as well as the prior offenses committed by the known occupants, reasonably justified the authorization and use of force to effectuate this search. The trial court commented in instances such as this "the nature of the announcement of the entry becomes somewhat circumscribed by necessity." Commenting further on its assessment of the police procedure employed, the court concluded:

"So, what under the circumstances did the officers do even though they were authorized to use force? There was an an-

nouncement, albeit it was almost contemporaneous with the entry, nevertheless there is testimony here and it's not rebutted, that that announcement caused other doors in that apartment complex to open and people to stick out their heads. In addition to that, Officer Davis testified that he called the residence on the telephone prior to the entry with the distinct purpose and intention of notifying contemporaneously with the entry what the situation was.

Given the fact that the issuing judge believed that there were exigent circumstances to authorize the use of force, and that that I believe was not an unreasonable conclusion on his part, given the fact of the testimony here, the evidence, the unrebutted evidence of the precautions that were also taken contemporaneous with the entry, I don't see what else could have been done. And it seems to me under the circumstances that the whole matter was approached in a very professional way under the constraints of the law."

The trial court did not believe a "knock-and-announce" entry was absolutely necessary based upon the information presented when the warrant was issued. Nevertheless, the court construed police procedure as laudable in attempting to effectuate a "knock-and-announce" entry, even though perhaps the requirement was not effectively complied with. The court ultimately rested its decision on a finding the entry and search were within the parameters of the law, given the totality of exigent circumstances, which the court believed authorized a forced entry.

The State on appeal argues from the facts that the knock-and-announce requirement was met. However, if this court were to conclude police did not sufficiently knock and announce, the State asserts the search was still reasonable under the exigent circumstances doctrine.

Section 108—8 of the Code of Criminal Procedure of 1963 provides "[a]ll necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." (Ill. Rev. Stat. 1985, ch. 38, par. 108—8.) Illinois has no statutory requirement that an officer knock and announce both his authority and purpose before entry while acting pursuant to a valid warrant; nor is the knock-and-announce rule constitutionally mandated. Still, the fourth amendment prohibits all unreasonable searches and seizures. The propriety of any entry must be determined by constitutional considerations. *People v. Hartfield* (1968), 94 Ill. App. 2d 421, 237 N.E.2d 193.

As a general rule, absent exigent circumstances, officers are ex-

pected to announce their authority and purpose prior to entering a premises to be searched when executing a search warrant. (*People v. Stephens* (1974), 18 Ill. App. 3d 817, 310 N.E.2d 755.) While the mere failure to announce authority prior to executing a valid warrant is not a *per se* constitutional violation (*People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513), it is nevertheless a factor which may influence a determination of whether a subsequent entry to arrest or search was constitutionally reasonable (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, *cert. denied* (1978), 436 U.S. 908, 56 L. Ed. 408, 98 S. Ct. 2243). Our supreme court has held that where exigent circumstances are present, it is not a constitutional violation for police to fail to knock and announce their authority. *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.

The announcement requirement itself serves several important purposes. By notifying persons inside a residence of an officer's presence and affording them an opportunity to respond, the potential for violence is decreased, the privacy of the occupants is protected, and the physical destruction of evidence may be averted. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, *cert. denied* (1978), 436 U.S. 908, 56 L. Ed. 2d 408, 98 S. Ct. 2243; 2 W. LaFave, Search & Seizure sec. 4.8(a), at 272 (2d ed. 1987).) The persons inside must be given time to adequately respond. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 518, 401 N.E.2d 507, 510.) No rigid rule or time constraint is applicable; each instance must be viewed on the individual facts and circumstances presented. What might be a reasonable period of time in one situation may be insufficient based upon differing circumstances. (See, *e.g.*, *People v. Boykin* (1978), 65 Ill. App. 3d 738, 382 N.E.2d 1369 (10-second interval before entry deemed sufficient to justify reasonable entry given warrant obtained to search the premises for heroin, the lack of response to the knock and announcement, and the suspicious "scuffling" sounds heard within).) All that is required is that an officer wait a "reasonable period of time" before breaking and entering into the premises to be searched, and that the occupant be given "a reasonable opportunity to surrender his privacy voluntarily." 2 W. LaFave, Search & Seizure sec. 4.8(c), at 278 (2d ed. 1987).

It is apparent from the record and testimony some form of announcement was made prior to entry into the apartment. The pertinent question becomes the timing and content of that announcement.

We are unable to say whether the occupants of the apartment were ever afforded a reasonable opportunity to respond. It is difficult to ascertain how much time elapsed between announcement and entry. One officer testified to a five-second interval. The videotape adds lit-

tle. While Officer Metzler stated other apartment doors in the building opened as a result of his announcement, thereby implying a sufficient time to answer, nothing in the record reflects whether this occurred before or after officers forcibly opened the door. The actions of neighboring individuals could just as well have been in response to the flurry of police activity occurring outside their windows. In addition, the unanswered phone call made to the apartment accomplished nothing.

Ancillary to the timing issue is the nature of the announcement. From the testimony, the presence of police representing the city of Champaign was communicated. Perhaps a request or command to open the door was also made. No specific purpose, however, was ever enunciated. Metzler did not state police had a warrant to search the particular premises involved.

■■ ■ We cannot uphold the entry under the knock-and-announce rule, as we believe a "no-knock" entry occurred. Rather, we agree with the trial court when it concluded sufficient exigent circumstances existed to justify this entry and search into the premises pursuant to a valid warrant. While several factors have been identified in determining whether exigent circumstances exist, the guiding principle is reasonableness, with each case to be decided on the basis of the facts known to police officers at the time they acted. (*People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369, 1376, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Eichelberger* (1982), 91 Ill. 2d 359, 370, 438 N.E.2d 140, 145, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383.) In the seminal Illinois case regarding warrantless entries, which involves a far less secure legal foundation, several factors of exigency and reasonableness were identified, including: (1) the need for prompt action; (2) a belief that the suspects were armed and exhibited some sign of violent behavior; (3) a clear showing of probable cause based on reasonably trustworthy information; and (4) a strong reason to believe the defendants were present on the premises. (*People v. Abney* (1980), 81 Ill. 2d 159, 170-73, 407 N.E.2d 543, 548-49.) Among other factors that may be taken into account are the nature of the object of the warrant, the danger to police officers, the possibility of destruction of the evidence, the probability of escape by a defendant, and whether it would be a useless gesture to knock and announce. (*People v. Seybold* (1981), 98 Ill. App. 3d 236, 239-40, 423 N.E.2d 1132, 1134.) There are no hard-and-fast guidelines; however, additional relevant factors of reasonableness may arise depending upon the unique factors of each individual case.

■ There is no blanket rule which allows for establishment of exigent circumstances merely due to the existence of narcotics in the premises, which by their nature may be easily disposed of or destroyed. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.) Police should have particular reason to believe that narcotics are so located as to be instantaneously disposable, or that evidence will be destroyed. Further, even where there is knowledge of a handgun on the premises, the announcement requirement will be excused only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. (78 Ill. 2d 511, 520, 401 N.E.2d 507, 511.) Nevertheless, the presence of a weapon coupled with knowledge of prior violent crimes or dangerous propensities by the occupants may constitute an exigent circumstance. *People v. Clark* (1986), 144 Ill. App. 3d 7, 494 N.E.2d 166.

The police conduct here was constitutionally reasonable. The warrant stated reasonable force may be necessary to ensure the safety of the officers and to prevent the destruction of evidence. The warrant also outlined the particular items of evidence to be seized in the search. The apartment had been kept under surveillance, and a clear pattern of drug trafficking had been observed. Two police informants had gone into the premises to make drug purchases. They returned with information describing the heroin and other paraphernalia present. They also returned with information identifying occupants of the apartment. One informant stated he observed the presence of a weapon in the bedroom nearby where foil packets purportedly containing heroin were kept. A handgun was recovered from a bed in the room where heroin was found. Law enforcement officers knew who the occupants of the apartment were. They also were aware of the occupants' prior criminal records, including a conviction for battery.

■ Whether a search was reasonably conducted is a substantive determination to be made by the trial court in the first instance. (*Ker v. California* (1963), 374 U.S. 23, 33, 10 L. Ed. 2d 726, 738, 83 S. Ct. 1623, 1630.) Such a determination will not be overturned by a reviewing court unless manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, 282.) We hold the trial court properly found the totality of circumstances known to police officers when the warrant was executed justified the procedures actually undertaken. The failure of police officers to effectively announce both their authority and purpose prior to entry did not render the subsequent entry or search constitutionally unreasonable under the facts and circumstances of this case.

Defendant relies heavily on the recent decision of the appellate

court in *People v. Clark* (1986), 144 Ill. App. 3d 7, 494 N.E.2d 166. We find *Clark* distinguishable on the facts. The court in *Clark* stated a "notorious and vociferous display" by police in pulling up to defendant's home on a quiet residential street did not circumvent their duty to knock-and-announce their authority. Likewise in *Clark*, police had only some "sketchy" information regarding a gun on the premises, whereas here the information was far more reliable. The trial court also relied upon the mere fact cocaine was being sought, which by itself is not enough, as the *Clark* court noted. The court in *Clark* also commented the trial court erroneously attached significance to the failure of a previously arrested "middleman" in the sale to immediately return to defendant's home, even though there was no reason for him to do so. Finally, the *Clark* court found a fourth amendment violation in "the patently unreasonable method of entry" employed where the front door was blasted open with a battering ram *while* police were announcing their authority, and where defendant was immediately pushed to the floor with a shotgun at his head.

■ Defendant's second assertion involves the trial court's denial of his proffered instruction on the included offense of possession. Defendant contends he presented evidence to establish he was merely a drug user and not a distributor or manufacturer of heroin. He concludes the jury could have found him guilty of the lesser offense of possession, and it was error for the court to refuse such an instruction.

Where the record contains evidence which, if believed by the jury, would reduce a crime to a lesser offense, the trial court should instruct the jury as to the lesser offense. (*People v. Mitchell* (1984), 129 Ill. App. 3d 189, 199, 472 N.E.2d 114, 121.) Where, however, the evidence is sufficient for a conviction on the greater offense, it is not reversible error to instruct only as to that offense. *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066, *cert. denied* (1983), 464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206.

■ ■ Possession of a controlled substance with intent to deliver, as well as possession alone, are included offenses of delivery. (*People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319.) Of necessity one must possess a controlled substance in order to intend to deliver or manufacture it. This does not mandate instructing a jury on the lesser offense of possession in all such cases. (*People v. Dunn* (1977), 49 Ill. App. 3d 1002, 1010, 365 N.E.2d 164, 170.) Thus, it is not error for a court to refuse to give an instruction on possession where the evidence presented by the State concerns delivery or intent to deliver a controlled substance, and the defendant neither rebuts the evidence of

delivery nor shows he was merely in possession of the substance. (*People v. Zipprich* (1986), 141 Ill. App. 3d 123, 490 N.E.2d 8.) Evidence sufficient to support the lesser and relatively minor crime must be presented at trial to require a court to give an instruction defining that lesser offense.

According to the testimony at trial, when police officers gained entrance to the apartment, they found the defendant along with three others—Terrell Cole, Candy Thomas and John Smith—present in the south bedroom. Cole was moving to answer the telephone, and one officer told him to leave it alone. Thurman Fonville, the defendant's father, was lying asleep in bed in the north bedroom. He was wearing a pair of pants that were unbuttoned and unzipped. A white powdery substance commonly known as Dorman, an antihistamine available over-the-counter but also utilized as a "cutter" in refining heroin for sale, was located on a small plate on a card table situated between two beds in the south bedroom. Along with the plate, a playing card and a toothbrush were recovered from atop the card table. Several foil packets containing a substance later identified as heroin with traces of Dorman were found in plain view in the bedroom. Likewise, several plastic bottles containing foil packets and a light brown substance were in the room, as were both opened and unopened boxes of Dorman. Dark brown material which later tested out as "pure" heroin was observed in a freezer compartment of a refrigerator in the south bedroom. Various other items, including razor blades, cut straws, scissors, syringes, needles, plastic spoons, baggies, twist ties, tinfoil and a pie pan, were noted in a dresser drawer as well as throughout the apartment.

Two loaded handguns were also recovered from the south bedroom; one was located under a pillow at the foot of the bed, and the other was located in a dresser drawer. Upon searching the four occupants of the south bedroom, a roll of cash totalling $1,763 was found on the defendant's person. No money was discovered on either Thurman Fonville or Candy Thomas. A total of $170 was recovered from John Smith, and $12 was recovered after a pat-down of Terrell Cole.

Thurman Fonville testified on his son's behalf. He stated he rented the apartment in question for himself, and that the defendant never lived at that address. He admitted defendant kept several personal items, including letters, in the apartment. Candy Thomas was staying there until she could find her own place. She was helping Fonville with the "operation." John Smith's job was cutting heroin for distribution. Both Thomas and Smith assisted Thurman in the sale of heroin.

Thurman Fonville further testified the defendant, his son, had only come to visit him that day to check on his health. He denied defendant was involved in the sale or manufacture of narcotics. Rather, Thurman Fonville stated defendant was probably a heroin user, although he had never sold heroin to his son or saw him use it.

Gloria Fonville, the defendant's wife, also testified she believed her husband was using drugs. She stated defendant spent a great deal of time at home, and not at Thurman Fonville's apartment. Evidence was introduced that the defendant was treated for withdrawal symptoms while in jail after the February 6, 1986, raid.

■■■ We cannot agree with defendant that failure by the trial court to give a jury instruction defining the offense of possession constituted reversible error. Defendant's theory is that he was addicted to heroin, as evidenced by his withdrawal symptoms while in jail, but he did not sell or manufacture it. Defendant would have us believe his mere presence in the apartment, even with a large amount of money upon his person, indicated he was only a user of the narcotic.

Testimony of the officers entering the premises detailed the paraphernalia present in the apartment which are also involved in processing heroin for distribution. Large amounts of Dorman were found; testimony detailed how the substance is utilized as a cutting agent in preparing heroin for street sale. According to testimony, Dorman is typically baked in a pie tin in an oven to obtain a brown coloration more consistent with the appearance of heroin. A pie tin was located in the premises. Heroin is normally packaged for sale on the street in tinfoil. Many such tinfoil packets containing heroin and traces of Dorman were observed in the apartment. Testimony also indicated how other articles recovered from the premises, including a playing card, plastic spoons, razor blades and a toothbrush are used in "manufacturing" heroin before distribution.

Also important is the evidence that $1,763 was taken from the defendant after the pat-down search. Defendant's father and the others were possessed of little, if any, money. Were the others present the ones dealing drugs, and not the defendant, it would seem the reverse would be true.

In sum, defendant's addiction and his father's testimony are not sufficient to rebut the State's evidence or show mere possession. Again, possession is necessarily involved where someone intends to manufacture or deliver a controlled substance. This does not necessitate the giving of an instruction on the lesser offense.

Such an instruction might have been given, but the failure to give an otherwise appropriate jury instruction requires reversal only when

the defendant was so prejudiced by that failure as to affect the outcome of the verdict. (*People v. Bertucci* (1980), 81 Ill. App. 3d 851, 859, 401 N.E.2d 1123, 1129.) No such prejudice is apparent in this case, and we find no reversible error.

Defendant's third contention of error involves the testimony of Kim Thompson as a rebuttal witness and a refusal by the court to give a limiting jury instruction.

At the conclusion of the defendant's case, the State called Kim Thompson in rebuttal. She testified she lived in the apartment directly above the one rented by Thurman Fonville. Thompson stated she purchased drugs from both the defendant and his father during January and February of 1986. Specifically, Thompson related she went into the apartment to buy drugs on the night before the February 6 raid on the premises. She recalled in that transaction defendant handed the heroin to Thurman Fonville, who in turn handed it to her.

Thompson admitted she had been arrested two days prior to this trial on a charge of prostitution. She indicated no agreements had been entered regarding prosecution for that offense in return for her testimony. However, she did state she was told she would be let out on her own recognizance if she came into court and testified truthfully.

Defendant's assertion that Thompson's testimony should not have been allowed in as rebuttal because defendant himself had not testified is wholly without merit. Her testimony clearly rebutted Thurman Fonville's testimony indicating his son did not participate in the manufacture or sale of heroin out of the apartment, but rather was merely an addict. This is a clear-cut example of rebuttal. Thompson's testimony could also rebut by inference defendant's evidence attempting to show he was only a casual visitor to the apartment to check up on his father, and was not there on a more permanent basis.

We reject defendant's argument that a limiting instruction regarding testimony of other offenses should have been given. While Thompson's testimony of earlier purchases made during January and February might be construed as indicating crimes beyond that which was charged, it has also been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93.) Her testimony was admissible as rebuttal. Moreover, such evidence could have been admitted to show one ongoing offense in the nature of possession with intent to deliver and manufacture, rather than to show other separate offenses. No prejudice enured to the defendant by the court's failure to offer such

an instruction.

■■ ■ Finally, defendant argues the trial court erred in refusing his request for additional time to produce a witness.

The trial in this matter commenced on September 16, 1986. On the morning of September 17, defense counsel told the court one witness he intended to call, Terrell Cole, was not present to testify. Counsel indicated Cole, who was in the apartment when defendant was arrested, was not under subpoena. Counsel asked that he be allowed until the following morning to present Cole to testify. The court granted counsel's request. That afternoon, after another witness testified, an initial jury instruction conference was held.

On the morning of September 18, Terrell Cole was again initially not available as a witness. The defendant rested his case, and the State presented its evidence in rebuttal. A further conference on jury instructions was begun. At this time, defense counsel stated he just received a message from Cole indicating Cole had overslept, and could get to court by 11 a.m. Defense counsel then moved to reopen his case and to call Cole as a witness. The record reflected this request was made at 10:40 a.m. However, the court denied the request for a continuance. Defendant therefore asserts the trial court's failure to grant a 20-minute continuance requires he be given a new trial.

The granting or denying of a motion for a continuance to procure a witness is within the sound discretion of the trial court, and will not be disturbed absent clear abuse. (*People v. Brown* (1982), 92 Ill. 2d 248, 442 N.E.2d 136.) When reviewing the exercise of a court's discretion, an appellate court must determine whether defendant exercised diligence to ensure the availability of his witness to testify. (*People v. Tyler* (1975), 28 Ill. App. 3d 538, 328 N.E.2d 585.) A court on review must also consider whether the evidence would be material to the case or might affect its outcome, and whether defendant has been prejudiced in his right to a fair trial. *People v. Harrell* (1983), 112 Ill. App. 3d 241, 445 N.E.2d 496.

■■ We find the trial court did not abuse its discretion in denying a continuance under the circumstances. Defendant had several opportunities to produce this witness, but failed to do so. All evidence had been presented; the defendant had rested his case. A jury instruction conference was underway when defense counsel indicated the witness had overslept but would be available in 20 minutes. There is no indication whether this witness' testimony would be material to the case or affect its outcome. The failure of defendant to subpoena this witness or otherwise compel his attendance at trial indicates a lack of diligence.

Accordingly, for the foregoing reasons, the judgment and sentence of the circuit court of Champaign County is affirmed.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.