THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS SONNTAG, Defendant-Appellant.

Second District   No. 2—83—0966

Opinion filed October 30, 1984.

G. Joseph Weller, Paul J. Glaser, and Jan K. Dargel, all of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Douglas Sonntag, was found guilty in a jury trial of one count of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(6)), and was subsequently sentenced to an 18-month term of probation.

The issue raised by defendant in this appeal is whether, following a hearing, the trial court erred in denying his motion for discharge which alleged the failure to try him within the statutory 120-day speedy-trial term pursuant to section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a)).

As defendant's sole contention on appeal relates to whether the 120-day speedy-trial term was complied with, we set forth only those facts necessary to resolve that issue and need not recount the trial testimony. On August 26, 1982, defendant was incarcerated following an altercation occurring at his father's residence and was charged with aggravated battery and other misdemeanor offenses arising out of this incident. The defendant failed to post bond. Following a preliminary hearing and a bond reduction hearing, defendant's counsel filed on October 18, 1982, a petition to determine the defendant's fitness. The petition was dismissed for failure to raise a *bona fide* doubt as to the defendant's fitness to stand trial. The trial judge explained

that the petition was based on conclusions and that specific grounds must be raised in support of a petition to determine fitness. However, the court granted Mr. Conniff, defendant's counsel, leave to refile an amended petition at a future date. Additionally, the court was informed that defense counsel had failed to comply with discovery since he had "anticipated we were going to proceed by way of a fitness hearing." A trial date was then set for December 13, 1982.

On the following day, October 19, 1982, defendant filed a petition for a physical examination because of pain in his shoulder from a prior injury, as well as a petition to appoint a qualified expert to examine him on the question of fitness pursuant to section 104—11(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—11(b)). The court granted the latter petition and ordered that the defendant submit to an examination by Dr. Lyle Rossiter to determine if a *bona fide* doubt of fitness may be raised. The judge noted that "I am not making that determination now, but only to determine if there is a *bona fide* doubt." Defendant's motion for a physical examination was continued, pending the results of a previous examination, to October 25, 1982. On October 19, 1982, defendant had been incarcerated for 55 days.

On October 25, 1982, after reviewing a medical report, the court granted the defendant's motion for a physical examination. At this time, the defendant, on his own oral motion, requested a change in public defenders. Mr. Conniff, defendant's then-assigned public defender, explained that he was making arrangements internally for the office to have another public defender assigned to the case. The court reminded counsel that the case was set for trial December 13, 1982.

On December 13, 1982, the day the case was set for trial, the State answered ready. At this time, Mr. Conniff filed another petition to raise a *bona fide* doubt of the defendant's fitness to stand trial based, in part, on the defendant's refusal to submit to an examination by Dr. Rossiter. The defendant renewed his request for a change of public defenders.

The trial court granted Mr. Conniff's petition on behalf of defendant to raise a *bona fide* doubt and ordered again an evaluation by Dr. Rossiter, continuing the matter to January 10, 1983, pending a report on the defendant's fitness status. The court also stated that another public defender would be appointed. On December 13, 1982, defendant had been incarcerated for 109 days.

On January 10, 1983, it was again reported back to the court that the defendant refused to speak to Dr. Rossiter. A new public defender, Mr. Thomas Laz, appeared as substitute counsel and moved to

withdraw the petition for a fitness hearing previously filed by public defender Conniff. The trial judge allowed the petition to be withdrawn, but ruled that since a *bona fide* doubt of the defendant's fitness had been raised in his mind it was the duty of the court, on behalf of the defendant, to conduct a fitness hearing. The court set the cause for a jury fitness hearing on January 19, 1983.

On January 19, 1983, the parties answered ready for the defendant's fitness hearing. However, due to the court's involvement in another matter, the fitness hearing was continued to the following day, January 20, 1983.

On January 20, 1983, a fitness hearing was held, and a jury determined that the defendant was fit to stand trial. After this finding, the court ordered a bond hearing for the following day.

On January 21, 1983, a bond hearing was held on motion of the court. As a result, the defendant was released on a recognizance bond with the conditions that he not have any communication with his father or go to his father's residence. The cause was then set for trial on February 2, 1983. The defendant also made a formal demand for trial on January 21, 1983.

After several trial dates were continued either on a motion of the defendant, who was on bond, or the State, or by the court on its own, on June 20, 1983, the State filed a motion to revoke the defendant's bond, alleging that he had violated one of the conditions since he had no place to live other than at his father's residence. The State's motion was granted, and the defendant was again taken into custody on the original offense. The trial date of July 25, 1983, set while the defendant was on bond, was undisturbed.

On July 20, 1983, the defendant filed a motion to dismiss alleging that he was not tried within 120 days of being taken into custody pursuant to section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a)). The court heard argument on the motion on July 25, 1983.

On July 26, 1983, the trial court denied defendant's motion to dismiss, finding that the speedy-trial term was tolled from the filing of defendant's petition to determine fitness on October 19, 1982, until the determination on January 19, 1983, ascribing the delay to the defendant because of his refusal to consult with a psychiatrist pursuant to court order. Following this ruling, the cause proceeded to a jury trial, and the defendant was found guilty of one count of aggravated battery.

It is defendant's contention that he was held in custody without trial for a total of 144 days. He computes this period of time in cus-

tody as beginning on August 26, 1982, the date he was arrested, until December 13, 1982, the date he concedes the speedy-trial term was tolled by his filing of a petition to raise a *bona fide* doubt of his fitness and the court's granting of a hearing on it. This time period is 109 days. Defendant then maintains that the original speedy-trial term again started to run on June 20, the date he was reincarcerated on the original offense, following a violation of bond, and continued for another 35 days until his trial began on July 25, 1983. Computing the original period of incarceration of 109 days, before his motion for a fitness hearing and his release on bond, together with the second period of incarceration of 35 days, after his bond was revoked and until trial, defendant contends he spent 144 days in jail without a trial, in violation of the statutory 120-day trial provision.

Initially, we must address the State's contention, made without citation of authority, that section 103—5(a), which pertains to trial for persons in custody, contemplates a continuous period of 120 days' incarceration from the date defendant was originally taken into custody. It maintains that defendant's release on bond does not operate to toll the statute and, in effect, ends the running of the statutory term provided in 103—5(a). Thus, the State argues that defendant's addition of both periods of incarceration, before being released on bond and after his bond was terminated, is not correct.

The pertinent provisions of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5), known as the Speedy Trial Act, which relate to trial of a defendant in custody or on bail or recognizance, are as follows:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal.
>
> (b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determi-

nation of the defendant's physical incapacity for trial, or by an interlocutory appeal.

\* \* \*

(d) Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance.

\* \* \*

(f) Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subparagraphs (a), (b), or (e) of this Section and on the day of expiration of the delay the said period shall continue at the point at which it was suspended."

The issue appears to be unique in that we have found no Illinois case which has specifically addressed the precise question here, of whether a defendant may combine two separate periods of incarceration, interspersed by defendant's release on bond and termination of bond by violation of its conditions, arising out of the same initial charge in determining whether he has been held in violation of the 120-day statutory period. Section 103—5(a) by its terms does not expressly cover this issue.

With respect to an offense allegedly committed prior to March 1, 1977, a delay caused by the defendant within the 120-day statutory period tolled the running of the statute, and a new statutory period commenced to run from the date to which the case had been delayed. (*People v. Gooding* (1975), 61 Ill. 2d 298, 301, 335 N.E.2d 769; *People v. Lee* (1969), 44 Ill. 2d 161, 166, 254 N.E.2d 469.) For offenses allegedly committed on or after March 1, 1977, Public Act 79—1237 now provides that a delay occasioned by the defendant temporarily suspends for the time of the delay the period within which the defendant shall be tried. (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(f); *People v. Donalson* (1976), 64 Ill. 2d 536, 540, 356 N.E.2d 776.) It seems clear that the legislature by enactment of Public Act 79—1237 intended to attribute to a defendant a much shorter period of time caused by his delay for which the statutory term would be tolled than would have been formerly applicable when the full statutory period would commence anew.

As the speedy-trial provisions of section 103—5 implement the right to a speedy trial guaranteed by the Illinois Constitution, the statute is to be liberally construed. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106, 440 N.E.2d 872; *People v. Pearson* (1981), 88 Ill. 2d 210, 216, 430 N.E.2d 990.) Our supreme court has stated that it will avoid technical constructions which frustrate the purpose of our State's

speedy-trial provisions. *People v. Christensen* (1984), 102 Ill. 2d 321, 329, 465 N.E.2d 93.

■ The State has not referred us to any policy considerations or legislative debate which would support its position that a narrow interpretation of the 120-day statutory provision should be applied so that a continuous period of incarceration is required under section 103—5(a). Here, the defendant was in custody after his bond was revoked for the same offense for which he was originally incarcerated. The 120-day period prescribed in section 103—5(a) commences to run on the date defendant is in custody for the offense for which discharge is sought. (*People v. Davis* (1983), 97 Ill. 2d 1, 11, 452 N.E.2d 525.) Although defendant was released on a recognizance bond for a period of time until that bond was terminated by the court for failure to comply with its conditions, we believe that the delay in trial occasioned by defendant by his release from custody should only temporarily suspend for the time of the delay the time within which he should be tried. This construction of the speedy-trial provision would be in conformance with the policy of liberal interpretation of the statute and its legislative history as reflected in Public Act 79—1237. Thus, under the particular circumstances present here, we conclude that the defendant may combine two separate periods of incarceration in determining whether he has been in custody in violation of the 120-day statutory period prescribed in section 103—5(a).

■ Defendant principally contends on appeal that the trial court improperly tolled the speedy-trial term on October 19, 1982, the date the defendant filed his first petition for a qualified expert to be appointed to determine if a *bona fide* doubt of his fitness to stand trial could be raised. Rather, defendant argues that the speedy-trial term should only have been tolled when a *bona fide* doubt of his fitness to stand trial had arisen. Defendant concedes that a *bona fide* doubt did arise, thus the speedy-trial term tolled, on December 13, 1982. In support of his argument defendant notes that on October 19, 1982, when the court below initially ordered Dr. Rossiter to examine him, it expressly stated that the examination was ordered "only to determine if there is a *bona fide* doubt."

The State maintains, consistent with the findings of the court below, that the 120-day speedy-trial term was tolled on October 19, 1982. The State asserts that there is nothing to suggest that when a qualified expert is appointed, pursuant to the revised fitness provision (Ill. Rev. Stat. 1981, ch. 38, par. 104—11(b)), the statutory speedy-trial period should not be tolled.

Section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill.

Rev. Stat. 1981, ch. 38, par. 103—5(a)), in pertinent part, provides:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, *by an examination for competency ordered pursuant to Section 104—2 of this Act,* by a competency hearing, by an adjudication of incompetency for trial, \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a).)

However, section 104—2 of the Code of Criminal Procedure of 1963 was repealed by Public Act 77—2097, effective January 1, 1973. It was replaced by section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1); in 1979 section 5—2—1 was repealed and replaced by the current fitness provisions found in section 104—10 *et seq.* of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—10 *et seq.*). Unfortunately, as a result of legislative oversight the reference to "Section 104—2" and an examination for "competency" in section 103—5(a) was never changed to correspond to the present statutory provision nor was this section amended to reflect the new terminology of "fitness" instead of "competency." (See *People v. Gibson* (1974), 21 Ill. App. 3d 692, 694-95 n.2, 315 N.E.2d 557.) It has been held that the present standard of "fitness" must be equated with "incompetence" for the purposes of tolling the speedy-trial term. *People v. Williams* (1977), 48 Ill. App. 3d 842, 849, 362 N.E.2d 1306; see also *People v. Bickham* (1976), 39 Ill. App. 3d 358, 360-63, 350 N.E.2d 351.

A further analysis is required, however, because the present statutory provisions for examination for fitness as enacted into law in 1979 by Public Act 81—1217 provide for examinations when a *bona fide* doubt of fitness is raised or when the defendant requests a qualified expert be appointed to examine a defendant to determine if a *bona fide* doubt of fitness to stand trial may be raised. The provisions relating to raising the issue of fitness to stand trial are now contained in section 104—11 (Ill. Rev. Stat. 1981, ch. 38, par. 104—11) and, in pertinent part, provide:

"(a) The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

(b) Upon request of the defendant that a qualified expert be

appointed to examine him or her to determine prior to trial if a bona fide doubt as to his or her fitness to stand trial may be raised, the court in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in the case. An expert so appointed shall examine the defendant and make a report as provided in Section 104—15. Upon filing with the court of a verified statement of services rendered, the court shall enter an order on the county board to pay such expert a reasonable fee stated in the order." Ill. Rev. Stat. 1981, ch. 38, pars. 104—11(a), (b).

The provision in subsection (b) of section 104—11 for appointment of a qualified expert to examine the defendant to determine prior to trial if a *bona fide* doubt as to fitness to stand trial may be raised is a new procedure authorized by Public Act 81—1217. The prior statutory provisions were similar to subsection (a) of section 104—11 in that an examination was provided only "when a bona fide doubt of the defendant's fitness is raised." Thus, subsection (b) now provides a procedure whereby a defendant may request appointment of a qualified expert to examine him prior to trial to determine if a *bona fide* doubt as to his fitness to stand trial may be raised, and the court in its discretion may order an appropriate examination.

The enactment into law of subsection (b) by the Illinois legislature resulted from its acceptance of that provision, among others, after it was included in an amendatory veto of Senate Bill 133 by Governor Thompson. Also included in the amendatory veto and accepted by the Illinois General Assembly was the further language in subsection (b) of section 104—11 which provides that "no order entered pursuant to this subsection shall prevent further proceedings in the case."

It is defendant's contention that only where a *bona fide* doubt of fitness is actually raised does an order for a fitness examination toll the speedy-trial term. In this case, defendant asserts, a *bona fide* doubt of fitness did not exist until December 13, 1982, not October 19, 1982, when he filed his original petition for appointment of a qualified expert to examine him under subsection (b) of section 104—11 as specified in that petition. As further support for this argument, defendant cites language of subsection (b) that an order entered pursuant to that subsection shall not prevent further proceedings in the case. It is noted that once a *bona fide* doubt of fitness is raised under subsection (a), the statute expressly provides that the issue of fitness shall be determined before proceeding further in the case.

In his amendatory veto message to the General Assembly, rele-

vant to subsection (b), Governor Thompson states as follows:

> "The bill must be expanded to permit the court to appoint a qualified expert to examine the defendant even though no bona fide doubt as to the defendant's fitness has actually been raised. It is common practice for judges to appoint an expert simply to determine whether there is any bona fide doubt. Because this procedure should be more flexible than that used when a bona fide doubt has been raised, the court, in its discretion, should be able to continue the proceedings for matters such as pre-trial motions during the period that the examination is being conducted."

Both houses of the Illinois General Assembly adopted the specific recommendation to include subsection (b) as suggested by Governor Thompson without any debate on this subsection.

First, we do not believe that the inclusion of the language in subsection (b) that "no order entered pursuant to this subsection shall prevent further proceedings in the case" was intended to be correlated to the speedy-trial provisions of section 103—5. Rather, as stated in Governor Thompson's amendatory veto message, the court should "in its discretion" be able to continue with the proceedings "for matters such as pretrial motions during the period that an examination is being conducted." There is logical reason why this language is included in subsection (b), but not in subsection (a), wherein a *bona fide* doubt of fitness has been raised and which provides that fitness must be determined "before proceeding further." It is well-established that a trial continued after a *bona fide* doubt of fitness is raised, but not resolved, is in violation of due process of law. (*People v. Johnson* (1984), 121 Ill. App. 3d 859, 860, 460 N.E.2d 336.) Once a *bona fide* doubt is raised, the trial, which includes pretrial proceedings wherein the defendant must confer with his counsel concerning his defense and may testify, cannot continue because of defendant's due process right not to be tried or convicted while unfit to stand trial. (See *People v. Murphy* (1978), 72 Ill. 2d 421, 430, 381 N.E.2d 677.) On the other hand, where an examination is ordered under subsection (b) to determine if a *bona fide* doubt of fitness may be raised, due process is not denied if the court, in its discretion, wishes to conduct other proceedings in the case while the examination is pending.

Thus, we do not interpret the purpose of the inclusion of that language in subsection (b) as relating to the speedy-trial provisions of section 103—5, nor does any other language in subsection (b) make any reference to the speedy-trial statute.

Accordingly, we must look to the Speedy Trial Act itself to deter-

mine whether the delay occasioned "by an examination for competency ordered pursuant to section 104—2 of the Act," as set forth in subsection (a) of section 103—5, includes a defendant's request, as here, for an appointment of a qualified expert to examine him to determine if a *bona fide* doubt of his fitness may be raised.

■ As we previously stated, section 104—2 no longer exists, and the provisions of 104—10 *et seq.* replace it. While the legislature neglected to amend section 103—5 to correspond to the new provisions, we believe that an examination for fitness ordered under the new provisions of sections 104—11(a), (b) operates to toll the speedy-trial term. Whether the examination is to determine if a *bona fide* doubt of fitness may be raised, or to determine actual fitness after a *bona fide* doubt of fitness has been shown to exist, the trial is interrupted for the purpose of determining fitness. An examination by qualified experts will generally cause some delay, which is why the statutory term is tolled. This is illustrated under the facts here, where following the filing of the petition on October 19, the defendant refused to be examined and became uncooperative with the counsel over whether he should be examined, which caused a delay and continuance of his scheduled trial date. Accordingly, we conclude that a delay caused by an examination for fitness under section 104—11(a) or (b) will toll the statutory speedy-trial term. We recommend legislative action on section 103—5 so that its present reference to examination for "competency" and to "section 104—2," now repealed, be amended to correspond to the present provisions in the Code of Criminal Procedure of 1963 in section 104—10 *et seq.* on fitness for trial.

Even assuming we were not to construe an examination to determine if a *bona fide* doubt as to fitness may be raised under section 104—11(b) is an examination for competency as referred to in section 103—5(a), causing a delay in the trial, we would still conclude under the circumstances here that a delay has been occasioned by the defendant. We note that the causes for delay of trial enumerated in section 103—5(a) are each separate reasons for delay, one of those causes being a delay occasioned by the defendant and another being a delay caused by an examination for competency. *Cf. People v. Williams* (1982), 105 Ill. App. 3d 372, 375-76, 434 N.E.2d 412.

A defendant is considered to have occasioned a delay when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to the delay. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106, 440 N.E.2d 872; *People v. Bivins* (1981), 97 Ill. App. 3d 386, 392, 422 N.E.2d 1044.) In resolving whether a delay is attributable to the defendant, much deference must be given to the

trial court's judgment, and its decision should be sustained absent a clear showing of abuse of discretion. *People v. Reimolds* (1982), 92 Ill. 2d 101, 107, 440 N.E.2d 872.

■■ We agree with the trial court that defendant's filing of the petition to appoint a qualified expert to examine him for fitness on October 19, 1982, and his subsequent actions in repeatedly refusing to submit to such an examination caused a delay in the proceedings occasioned by defendant. It is also apparent that from October 19, 1982, defendant began expressing reservations about his attorney which led to his request for another public defender on October 25. Thus, on the date set for trial, December 13, 1982, defendant was not ready for trial, was again uncooperative by still refusing to submit to an examination for fitness, and was continuing to object to his present counsel. The petition filed on October 19 was the beginning of this delay, the delay is attributable to the actions of defendant, and defendant's actions caused a delay in trial. We also observe that at the time defendant's counsel filed the defective petition on October 18, 1982, which was amended and filed on October 19, the assistant State's Attorney stated he believed the raising of the fitness issue would be a delay occasioned by defendant and defendant did not respond or dispute this assertion. As the 120-day statutory term became tolled on October 19, 1982, until defendant's release on bond, he had been in custody since his arrest for 55 days. Following the revocation of his bond on June 20, 1983, defendant was in custody another 35 days until his trial date of July 25, 1983. As computation of these two periods of time in custody adds up to 90 days, the State has not violated defendant's statutory right to a speedy trial.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.