THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES ARNHOLD, Defendant-Appellant.

Second District   No. 81—0381

Opinion filed January 31, 1986.

STROUSE, J., dissenting.

Charmaine Tellefsen, of Carponelli, Krug, Adamski & Goodstein, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Charles Arnhold, and four codefendants were found guilty of aggravated kidnaping and conspiracy to commit theft by a jury following a trial in the circuit court of Du Page County. Defendant was sentenced to serve concurrent 28- and 2-year terms of imprisonment for these offenses and was also ordered to pay a $5,000 fine for the aggravated kidnaping. Defendant appeals arguing that (1) he was denied his right to a speedy trial, (2) the trial court erred in allowing the jury to examine handwriting exhibits during deliberations when the exhibits had not previously been examined by the jury in open court, and (3) the trial court erred in permitting testimony about a photographic identification of defendant conducted while defendant was in custody and a lineup was feasible. We affirm.

This court has already reviewed, and affirmed, the convictions of defendant's four codefendants. Codefendant John Bolla's conviction was affirmed in a published opinion which sets forth the facts on which the convictions were based. (*People v. Bolla* (1983), 114 Ill. App. 3d 442, 448 N.E.2d 996.) For purposes of this appeal, it suffices to note that Edward Kvavli, a wealthy restauranteur and tavern owner, was abducted on May 29, 1980, and held for $600,000 ransom. Kvavli was released the next day on the understanding that he would raise, and pay to his abductors $600,000 or they would kill Kvavli, Kvavli's sister and Kvavli's nephew. Defendant and his four codefendants were arrested a few days later after the completion of a previously arranged drop of the money the abductors were demanding.

■ Defendant first argues that he was denied his statutory right to a speedy trial. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5.) Defendant was arrested on the charges at bar on June 3, 1980, and bonded out on July 18, 1980. He was arrested on unrelated charges on July 24, 1980, and withdrew his bond for the initial charges on August 21, 1980. On October 15, 1980, defendant filed several motions which tolled the speedy trial term.

For defendant to prevail on his claim, three periods of time must be included in computing the statutory term: (1) the period from defendant's initial arrest on June 3 to his bonding out on July 18; (2)

the period from defendant's July 24 arrest on unrelated charges to his withdrawal of his bond for the initial charges on August 21; and (3) the period from defendant's withdrawal of his bond to his October 15 filing of his motions. The State argues that the first of these three periods should be excluded and at oral argument urged this court to overrule our then recent decision in *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 470 N.E.2d 631, which is adverse to the State's argument. It will be unnecessary to reconsider *Sonntag* as the State urges, however, because the second period necessary to defendant's claim must be excluded from computation of the term.

The pertinent provisions of the Speedy Trial Act provide:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by defendant ***.
>
> * * *
>
> (e) If a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by sub-paragraphs (a) and (b) of this Section." (Ill. Rev. Stat. 1979, ch. 38, pars. 103—5(a) and (e).)

The dispositive question in the case at bar is whether a defendant on bond on one charge who is taken into custody on a second charge is, without more, also in custody on the first charge. There is a split of appellate court authority on this question. (*People v. Day* (1979), 76 Ill. App. 3d 571, 583, 394 N.E.2d 1378, 1388.) One line of authority holds that when a defendant on bond on one charge is taken into custody on a second charge he is automatically simultaneously in custody on both charges. (See, *e.g., People v. Wilson* (1974), 19 Ill. App. 3d 466, 468, 311 N.E.2d 759, 761; see also *People v. Brown* (1981), 94 Ill. App. 3d 609, 418 N.E.2d 1093, *aff'd on other grounds* (1982), 92 Ill. 2d 248, 255 (the question at bar apparently was not raised in the supreme court as that court said the appellate court's conclusion on that matter "is not here in dispute"); and *Heaney v. Northeast Park District* (1935), 360 Ill. 254, 260 ("A decision by a court of review is not an authority upon a question neither considered nor decided by it. [Citations.] *** questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents

***"), quoting with approval *Webster v. Fall* (1925), 266 U.S. 507, 69 L. Ed. 411, 45 S. Ct. 148.) The other line of authority holds to the contrary. *People v. Cooper* (1977), 56 Ill. App. 3d 354, 355-58, 371 N.E.2d 987, 987-89.

We choose to follow *Cooper* because it is more in harmony with the Speedy Trial Act's overall structure than cases such as *Wilson* and *Brown*. The Speedy Trial Act is characterized by a sharp distinction between defendants who are in custody and those who are on bail. The State is required to bring a defendant who is in custody to trial within 120 days from the date on which he was taken into custody. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a).) In contrast, a defendant on bail must be tried within 160 days from the date on which he demands trial. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(b).) To construe the phrase "simultaneously in custody on more than one charge" to encompass a situation where a defendant is in custody on one charge but still on bond on another would do violence to a statutory scheme which carefully and sharply distinguishes between defendants in custody and those on bond.

■■ Defendant was thus not in custody on the charges at bar for the period between his July 24 arrest on unrelated charges and his August 21 withdrawal of his bond for the charges at bar. This period, accordingly, must be excluded in computing the 120 day term. This is dispositive of the issue raised because the other two periods combined total less than 120 days. This being true, it is unnecessary to address the State's argument that the first period of custody should be excluded from the computation of the term.

■■ Defendant next argues that "[t]he trial court erred in allowing handwriting exhibits to be examined by the jury without first allowing such examination in open court." The allegation closest to this assertion of error in defendant's post-trial motions was that "[t]he Court erred in allowing handwriting exhibits of both known and questioned handwriting [*sic*] documents to be examined by the jury—although a handwriting expert had already testified as to his analysis." This claim that the jury should not have been given the exhibits because the expert had already given his opinion is quite different from the claim on appeal that the jury should not have been given the exhibits during deliberations because they had not examined them previously in open court. The issue raised has therefore been waived by defendant's failure to raise it in his post-trial motions. *People v. Pickett* (1973), 54 Ill. 2d 280, 282.

■■ Moreover, the claimed error is not cognizable as plain error. (87 Ill. 2d R. 615(a).) The plain error rule permits a reviewing court,

as a matter of grace in a criminal case, to consider unpreserved errors which deprived a defendant of substantial means of enjoying a fair and impartial trial or which occurred in a case in which the evidence was closely balanced. (*People v. Pickett* (1973), 54 Ill. 2d 280, 283.) A six-page handwritten note was found when defendant was searched at the time of his arrest. The note detailed a plan to kidnap Kvavli. The writing on the note was compared by handwriting expert Joseph Wichmann to liquor license applications which, the evidence indicated, had been filled out by codefendant Leo Bonvini. Wichmann was of the opinion that the same person who wrote the note had completed the applications. Defendant does not argue that the exhibits or Wichmann's testimony were inadmissible nor even that the exhibits could not have been shown to the jury under any circumstances. Rather, he makes the limited claim that the jury should have been shown the exhibits first in open court. Such an error could not have deprived defendant of substantial means of enjoying a fair and impartial trial. Also, the evidence at trial—including the evidence defendant had possessed the note, the evidence with respect to Kvavli's out-of-court photographic lineup identification of defendant and Kvavli's in-court identification of defendant while defendant was seated among spectators in the courtroom—was not so closely balanced that the mere linkage of the note to Bonvini, which was all the handwriting evidence did, could have prejudiced defendant. The issue therefore will not be reviewed as plain error.

■ Defendant's third and final argument is that Kvavli's identification of defendant from a photographic lineup should have been suppressed because defendant was in custody and a lineup was otherwise feasible. Although the Illinois Supreme Court does not appear to have reversed any convictions solely on that basis, that court has often held that, when a suspect is in custody and a corporeal lineup is otherwise feasible, photographic identification techniques should not be used absent extenuating circumstances. (*People v. Kubat* (1983), 94 Ill. 2d 437, 471; *People v. Williams* (1975), 60 Ill. 2d 1, 9; *People v. Jackson* (1973), 54 Ill. 2d 143, 147-48; *People v. Holiday* (1970), 47 Ill. 2d 300, 306-07.) However, a violation of this rule will not result in reversal of a conviction where the witness who made the improper photographic identification also makes a reliable in-court identification. See *People v. Kubat* (1983), 94 Ill. 2d 437.

In the case at bar, Kvavli identified defendant first at a corporeal lineup; however, this identification was suppressed because defendant's right to the presence of counsel was violated. (*United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert*

*v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877.) Kvavli subsequently identified a photograph of defendant—showing the appearance of defendant's facial and head hair at the time of his arrest rather than their different appearance at the time of corporeal lineup—from a photographic lineup. Finally, after the court permitted defendant to be seated among spectators for purposes of Kvavli's in-court identification, Kvavli again identified defendant.

The only suggestiveness defendant claims may have undermined the reliability of Kvavli's in-court identification is the repeated showing of defendant to Kvavli in the various identification procedures. This, without more, is insufficient to so undermine the reliability of the in-court identification as to make it inadmissible. (See *People v. Kubat* (1983), 94 Ill. 2d 437 (in-court identification admissible after two photographic identifications, one of which was improper, had been made); *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.) Consequently, even if the photographic identification in the case at bar was improper, reversal would not be warranted because Kvavli also made a reliable in-court identification.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE STROUSE, dissenting:

I must respectfully dissent from the opinion of my colleagues. They have determined that our recent decision in *People v. Sonntag* (1984), 128 Ill. App. 3d 548, is irrelevant to a disposition of this case, and I disagree. Even the State, during oral argument, admitted that it could not prevail in the present case unless we reconsidered and overturned *Sonntag*.

In *Sonntag*, this court addressed a question similar to that raised here. The issue in *Sonntag* was whether a defendant may combine two separate periods of incarceration, interspersed by defendant's release on bond and termination of bond by violation of its conditions, arising out of the same initial charge in computing the 120-day period. (*People v. Sonntag* (1984), 128 Ill. App. 3d 548, 553.) In *Sonntag*, defendant was charged with and incarcerated for aggravated battery and other misdemeanor offenses. He filed a petition to raise a *bona fide* doubt of his fitness to stand trial, and the court granted a hear-

ing on it. He was subsequently released on a recognizance bond, with certain conditions imposed, and, upon violating one of the conditions, his bond was revoked and he was incarcerated until his trial. In computing the days he spent in custody, defendant combined the two periods of incarceration, both before being released on bond and after his bond was terminated. 128 Ill. App. 3d 548, 551-52.

The State in *Sonntag* argued, as here, that section 103—5(a), pertaining to trial for persons in custody, contemplates a continuous period of 120 days' incarceration from the date defendant was originally taken into custody. It argued that defendant's release on bond terminated the running of the 120-day term. *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 552.

The *Sonntag* court rejected the State's argument that a continuous period of incarceration is required under section 103—5(a), stating:

"The 120-day period prescribed in section 103—5(a) commences to run on the date defendant is in custody for the offense for which discharge is sought. [Citation.] Although defendant was released on a recognizance bond for a period of time until that bond was terminated by the court for failure to comply with its conditions, we believe that the delay in trial occasioned by defendant by his release from custody should only temporarily suspend for the time of the delay the time within which he should be tried. *** Thus, under the particular circumstances present here, *we conclude that the defendant may combine two separate periods of incarceration in determining whether he has been in custody in violation of the 120-day statutory period prescribed in section 103—5(a).*" (Emphasis added.) *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 554.

I recognize that the two periods of incarceration in *Sonntag* arose out of the same initial charge when defendant's bond was terminated because of violation of the bond conditions, whereas, in the present case, defendant's second period of incarceration was a result of his arrest on unrelated charges. In my opinion, the *Sonntag* rationale applies to the facts of the present case, and no distinction should be made on the basis that defendant's second incarceration was for unrelated charges. Accordingly, I would combine defendant's two separate periods of incarceration in determining whether his right to a speedy trial has been violated.

The next question is whether defendant was "in custody" for the present charges between July 24, the date he was arrested and incarcerated on unrelated charges, and August 21, the date he voluntarily

withdrew his bond on the initial charges. Defendant contends he was "simultaneously in custody" on more than one charge, pursuant to section 103—5(e) of the Speedy Trial Act (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(e)) during this 28-day period after his arrest on the second charges and before withdrawal of his bond on the first charges.

Defendant cites *People v. Brown* (1981), 94 Ill. App. 3d 609, *aff'd* (1982), 92 Ill. 2d 248, and *People v. Wilson* (1974), 19 Ill. App. 3d 466, in support of his position. In both *Brown* and *Wilson*, the defendant was arrested and incarcerated on the initial charges, later released on bond, and, during that time, reincarcerated on unrelated charges. In both cases, defendant's bond on the initial charges remained in effect during the second period of incarceration. The appellate court in *Brown* addressed the question of the irreconcilability of *People v. Wilson* (1974), 19 Ill. App 3d 466, and *People v. Cooper* (1977), 56 Ill. App. 3d 354, as to the interpretation of "simultaneously in custody upon more than one charge" when defendant is technically on bond for one of the charges. The *Brown* court, in a well-reasoned opinion, rejected the reasoning of *Cooper* and instead adopted the following language from *Wilson*:

> "The fact that the defendant is technically on bond for one of the charges should not defeat the purpose of [section 103—5(e)]. *** [W]e hold that, when a defendant is simultaneously charged with more than one offense and when he is in custody, he is 'simultaneously in custody upon more than one charge' within the meaning of subsection (e)." *People v. Wilson* (1974), 19 Ill. App. 3d 466, 468, see *People v. Brown* (1981), 94 Ill. App. 3d 609, 614, *aff'd* (1982), 92 Ill. 2d 248, 255.

In affirming *People v. Brown*, our supreme court stated that the question at bar "is not here in dispute." It is clear from the facts in *Brown*, however, that the supreme court could not have reached its decision without implicitly approving the rationale of the appellate court in adopting the *Wilson* reasoning rather than that of *Cooper*. I interpret this as an implicit rejection of the *Cooper* reasoning.

In my opinion, defendant was "simultaneously in custody" within the meaning of section 103—5(e) (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(e)) between the date of his incarceration on the subsequent unrelated charges (July 24) and the date he voluntarily withdrew his bond on the initial charges (August 21). I would include this 28-day period in computing the total number of days defendant was in custody prior to trial.

In sum, I would calculate defendant's time in custody as follows. Defendant was initially incarcerated for 45 days, from June 3, 1980,

to July 18, 1980, when he was released on bond. He was in custody another 83 days, from his incarceration on unrelated charges on July 24, 1980, to his filing of various motions on October 15, 1980. Since the total time in custody was 128 days, in excess of the 120-day statutory term, I would conclude that defendant's right to a speedy trial has been violated and that the statute requires his discharge without remand.

Accordingly, I would reverse defendant's conviction.