THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEROY S. CLARK, Defendant-Appellee.

Fifth District   No. 5—85—0844

Opinion filed October 20, 1986.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Randy E. Blue and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE JONES delivered the opinion of the court:

On appeal from the trial court's order discharging the defendant under the 120-day rule (see Ill. Rev. Stat. 1985, ch. 38, par. 103—5), the State contends that such discharge was improper after the defense had requested and obtained a fitness examination under section 104—11(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 104—11(b)), which indicated that the defendant was unfit to stand trial. The trial court, finding that no *bona fide* doubt of the defendant's fitness had been raised, rejected the State's argument that a fitness hearing, which would constitute delay occasioned by the defendant, was required. The State contends that the defendant's request and resulting examination constituted delay occasioned by the defendant so as to toll the running of the statutory 120-day period and that, in any event, the finding of the court-appointed psychologist, in and of itself, raised a *bona fide* doubt requiring a hearing so as to interrupt the speedy-trial term. We find these arguments to be persuasive and, accordingly, reverse and remand this cause for further proceedings.

The defendant, Leroy Clark, was charged by information filed on August 16, 1985, with the attempted murder of Vivian Klotner. The information alleged that on August 15, 1985, the defendant had stabbed Ms. Klotner with a knife in the shoulder, wrist, abdomen, and thigh.

At the defendant's preliminary hearing held on August 27, 1985, attorney Gordon Lambert requested that the court appoint his firm to represent the defendant without compensation. Attorney Lambert stated, however, that he would ask the court to have the county pay for a psychiatric examination of the defendant. The court, Judge

Robert Howerton presiding, questioned the defendant concerning his financial status but could not understand his responses. Judge Howerton, observing that the defendant had a speech impediment, asked if anyone in the courtroom could understand him and, when the defendant's sister responded that she could, requested that she "translate" the defendant's responses. After finding that the defendant was indigent, the court appointed the firm of Harris, Lambert and Wilson to represent the defendant without compensation as requested and proceeded to take testimony.

Mike Wiseman, a detective with the Marion police department, testified that on August 15, 1985, he received a report that Vivian Klotner had sustained multiple stab wounds and had been taken to Marion Memorial Hospital by ambulance. Officer Wiseman learned that the defendant had turned himself in at an automobile dealership. After the defendant had been arrested and read his *Miranda* rights, he presented Officer Wiseman with a card bearing attorney Lambert's name, and Officer Wiseman called the attorney's office. The defendant had two small cuts on his chest and finger, and the left shoulder of his shirt was saturated with blood.

Officer Wiseman testified that on August 26, 1985, he interviewed the victim, Ms. Klotner, at the hospital. She related that on August 15, 1985, at about 11:10 a.m., the defendant was at her door, and she invited him inside for some cookies and a glass of water. There was a filet knife lying on the kitchen counter, and the defendant picked it up. The defendant commented on what a nice knife it was and put it back down. The defendant again picked up the knife and said, "I wonder if it would cut a cat." The victim told the defendant, "We don't talk about things like that."

The victim stated that the defendant picked up the knife a third time and started toward her. At first she thought that the defendant was joking, but he began slashing at her. The victim managed to grab the defendant's wrist and prayed out loud, and the defendant began to relax.

However, the defendant resumed his attempts to stab the victim. The victim told the defendant, "I belong to Jesus and he wouldn't want you to do this." She felt the defendant relax, and she was able to get the knife, which she threw in the kitchen sink.

The victim related that she called the operator, who summoned the police and an ambulance for her. She ran across the street to a neighbor's house and remained there until she saw the defendant's car leave.

Following the court's determination of probable cause, defense

counsel, on September 10, 1985, filed a petition for psychological examination of the defendant. The defense moved for the appointment of Michael Althoff, a clinical psychologist, to examine the defendant in order to determine:

"a. Whether the defendant, because of a mental or physical condition, is unable to understand the nature and purpose of the proceedings against him or to assist in his defense; and

b. Whether as a result of mental disease or defect, the defendant lacked substantial capacity either to appreciate the criminality of his conduct at the time of the crime with which he is charged or to conform his conduct at that time to the requirements of law."

In an order filed September 13, 1985, the court granted the petition.

On October 21, 1985, Dr. Althoff sent defense counsel his report regarding the defendant. In his report Dr. Althoff noted that, when he asked the defendant why he stabbed the victim, the defendant said, "My head wasn't well that day." The defendant also told Dr. Althoff that he did not mean to stab the victim but was trying to stab himself. With respect to the defendant's intelligence, Dr. Althoff observed that the defendant functioned on a "borderline" level and that his I.Q. was about 72. The defendant did not know who was the President of the United States. The defendant also had a severe speech impediment.

Dr. Althoff concluded that the defendant was not fit to stand trial. Dr. Althoff was unable to reach a conclusion regarding the defendant's sanity at the time of the offense. Dr. Althoff stated that there was a likelihood that the defendant would engage in further inappropriate behavior and recommended that the defendant be treated in a minimum security facility.

On October 23, 1985, defense counsel filed a petition for the payment of Dr. Althoff.

In an order filed December 3, 1985, Judge Howerton directed Dr. Althoff to submit his report to the court immediately. The report was filed later that day. On December 10, 1985, the cause proceeded to a status hearing before Judge Snyder Howell, who heard the rest of the matters in this case. At this hearing Assistant State's Attorney Michael Ruffley requested the court to set the case for a fitness hearing, noting that the statute required the court to conduct a fitness hearing within 45 days of the receipt of the psychologist's report. See Ill. Rev. Stat. 1985, ch. 38, par. 104—16(a).

The assistant State's Attorney pointed out that defense counsel had asked the court to set the cause for a jury trial and asserted that

the issue of the defendant's fitness should be determined prior to trial. Defense counsel replied, "Your Honor, I would like for the record to reflect that the defendant has not and does not now request a fitness hearing of any kind." The court asked if the State desired a fitness hearing, to which the assistant State's Attorney responded in the affirmative. The defense requested that the fitness determination be made by a jury, and the cause was set for hearing on December 18, 1985.

On December 16, 1985, defense counsel filed a pleading entitled "Objection to Trial for Fitness of Defendant," in which he asked that the hearing set for December 18, 1985, be vacated. In support of this request, counsel stated that the record "does not indicate that this court has entered a finding that a *bona fide* doubt of the defendant's fitness to stand trial has been raised." The State filed a response to defense counsel's objection, in which it contended that defense counsel's petition for a psychological examination indicated that counsel had a *bona fide* doubt as to defendant's fitness and that, in any event, such a doubt was established by the psychologist's finding that the defendant was unfit.

On the next day, December 17, 1985, the court held a hearing on the question of whether there should be a fitness hearing. At this hearing Assistant State's Attorney Ruffley, in addition to making the points in his pleading, noted that, despite the fact that the statute required the submission of the psychologist's report, the State had had to obtain an order to compel its filing. The prosecutor stated that after learning that the defendant's own expert had found the defendant unfit, the State had requested a fitness hearing. He asserted that in light of the conclusion expressed in the report, any conviction of the defendant would be invalid without a determination of the defendant's fitness in a fitness hearing.

The court indicated that it did not think that it was proper for it to read the psychologist's report, stating:

"I don't know if I am supposed to read that report and then from that find that there is a bona fide doubt, or if I'm supposed to read that report at all. It has not been established that all the foundation that it's evidence. It's just in the file. I don't know if anyone would object to my reading it or not under these conditions, but I have my doubts, at this point in time, which is not maybe well-founded, but I have my doubts if I'm supposed to be reading all these things that are in this file, though it is the Court file."

The court asked if anyone would object to its reading the report.

Defense counsel Lambert simply stated that the court should determine if there was a *bona fide* doubt of the defendant's fitness. The court noted that it had not made a finding that there was a *bona fide* doubt as to the defendant's fitness. The court concluded by announcing that it would hold a hearing on the issue of whether there was a *bona fide* doubt of the defendant's fitness on December 18, 1985, the date on which the fitness hearing had been scheduled.

On December 17, 1985, the defense additionally filed a motion for discharge, alleging that the defendant had been incarcerated continuously for more than 120 days and that no delay was attributable to the defendant. The State objected to this motion on the ground that the defense had occasioned delay in moving for a fitness examination. The State also filed a motion requesting that the court reconsider its finding that no *bona fide* doubt of the defendant's fitness had been raised.

At the hearing on December 18, 1985, the court heard argument on the *bona fide* doubt issue. Addressing the question of whether it should consider the psychologist's report, the court declared, "It seems to me that this report from Doctor Althoff should have gone to the State by way of discovery, but I don't see any provision at all where [the report] is to be filed."

The court denied the State's motion to reconsider and took up the defendant's petition for discharge. The court heard testimony concerning the length of the defendant's incarceration and testimony of Assistant State's Attorney Ruffley concerning the effect of the question of the defendant's fitness on the State's ability to bring him to trial. The State argued that the defendant's motion for a fitness examination tolled the speedy-trial term, while defense counsel argued that only an actual hearing on the issue of the defendant's fitness could toll the statute.

Following argument the court ruled that neither the defendant's petition for a fitness examination nor the court's order granting the petition constituted a delay for purposes of the speedy-trial provision. The court observed that the statute governing fitness examinations provided that no order for such an examination "shall prevent further proceedings in the case" (Ill. Rev. Stat. 1985, ch. 38, par. 104—11(b)). The court further found that the court's order granting the petition did not, of itself, raise a *bona fide* doubt of the defendant's fitness so as to require a hearing. The court reiterated its determination that a *bona fide* doubt of the defendant's fitness had not been raised, stating:

"I don't find in this file any place where that (*sic*) I, or Judge

Howerton, has entered a finding or adjudication that there is a *bona fide* doubt of the defendant's condition or potential to stand trial."

Having determined that the defendant had not caused a delay, the court granted his petition for discharge.

At issue in the instant appeal are the pertinent provisions of the so-called speedy-trial statute (Ill. Rev. Stat. 1985, ch. 38, par. 103—5) and section 104—11(b), pursuant to which the defendant's fitness examination was ordered. Section 103—5(a) provides:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, *by an examination for competency ordered pursuant to Section 104—2 of this Act*, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a).

Section 104—11(b) provides:

"(b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a bona fide doubt as to his or her fitness to stand trial may be raised, the court, in its discretion may order an appropriate examination. However, *no order entered pursuant to this subsection shall prevent further proceedings in the case.* An expert so appointed shall examine the defendant and make a report as provided in Section 104—15. Upon the filing with the court of a verified statement of services rendered, the court shall enter an order on the county board to pay such expert a reasonable fee stated in the order." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 104—11(b).

■ On appeal from the trial court's order of discharge, the State contends initially that the trial court erred in discharging the defendant under the 120-day rule where the period was tolled by the granting of the defendant's petition for a fitness examination. The State cites as dispositive of this point the case of *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 470 N.E.2d 631. In *Sonntag* the court held:

"[A]n examination for fitness ordered under the new provisions of sections 104—11(a), (b) operates to toll the speedy-trial term. Whether the examination is to determine if a *bona fide* doubt of fitness may be raised, or to determine actual fitness after a

*bona fide* doubt of fitness has been shown to exist, the trial is interrupted for the purpose of determining fitness." 128 Ill. App. 3d 548, 558, 470 N.E.2d 631, 638.

The *Sonntag* court analyzed the provisions of the speedy-trial statute, observing that the reference to delay occasioned by the defendant by reason of a "competency" examination under section "104—2" was outdated and must be understood to refer to delay occasioned by a fitness examination under sections 104—11(a) and (b). (*People v. Sonntag* (1984), 128 Ill. App. 3d 548, 558, 470 N.E.2d 631, 638.) The court further found that inclusion of the language in section 104—11(b) that "no order entered pursuant to this subsection shall prevent further proceedings in this case" was not intended to relate to the speedy-trial provisions of section 103—5. Rather, the *Sonntag* court, making reference to Governor Thompson's amendatory-veto message relevant to section 104—11(b), stated that this language indicated that the trial court should " 'in its discretion' " be able to continue with the proceedings " 'for matters such as pre-trial motions during the period that an examination is being conducted.' " (*People v. Sonntag* (1984), 128 Ill. App. 3d 548, 557, 470 N.E.2d 631, 638.) The court explained:

"There is a logical reason why this language [was] included in subsection (b), but not in subsection (a), wherein a *bona fide* doubt of fitness has been raised and which provides that fitness must be determined 'before proceeding further.' It is well-established that a trial continued after a *bona fide* doubt of fitness is raised, but not resolved, is in violation of due process of law. [Citation.] Once a *bona fide* doubt is raised, the trial, which includes pretrial proceedings wherein the defendant must confer with his counsel concerning his defense and may testify, cannot continue because of defendant's due process right not to be tried or convicted while unfit to stand trial. [Citation.] On the other hand, where an examination is ordered under subsection (b) to determine if a *bona fide* doubt of fitness may be raised, due process is not denied if the court, in its discretion, wishes to conduct other proceedings in the case while the examination is pending." *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 557, 470 N.E.2d 631, 638.

We adopt the reasoning of the *Sonntag* court that the provision of section 104—11(b) regarding "further proceedings in the case" does not apply to prevent the tolling of the speedy-trial term when a fitness examination is ordered pursuant to section 104—11(b). Likewise, we find persuasive the *Sonntag* court's determination that the reference in section 103—5 to delay occasioned by examination of the

defendant for competency under section 104—2 must be understood to refer to delay occasioned by a fitness examination under sections 104—11(a) and (b). As noted by the *Sonntag* court, whether an examination is ordered pursuant to section 104—11(a) or section 104—11(b),

> "the trial is interrupted for the purpose of determining fitness. An examination by qualified experts will generally cause some delay, which is why the statutory term is tolled." (*People v. Sonntag* (1984), 128 Ill. App. 3d 548, 558, 470 N.E.2d 631, 638.)

Since, under the statute, the running of the speedy-trial term is tolled by such an examination for fitness, the trial court erred in its finding that no delay was occasioned by the defendant's examination here.

■ The trial court, in making its ruling, correctly noted that an order granting a defendant's request for a fitness examination does not, of itself, raise a *bona fide* doubt requiring a fitness hearing. As we have seen, however, the speedy-trial term is tolled by such an examination for the time during which the examination is conducted, even though no fitness hearing is found to be necessary following the examination. In the instant case the examination resulted in a finding by Dr. Althoff that the defendant was unfit to stand trial, and we believe that this finding was sufficient to raise a *bona fide* doubt of the defendant's fitness so as to require a fitness hearing. (*Cf. People v. Davis* (1984), 127 Ill. App. 3d 49, 468 N.E.2d 172 (findings of two psychiatrists that defendant was unfit for trial raised *bona fide* doubt of defendant's fitness requiring a hearing to determine fitness prior to revocation of conditional release under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1985, ch. 38, pars. 105—1 through 105—12)).) The defendant, on appeal, argues that the defense was not required to file the report of Dr. Althoff with the court and contends further that such a requirement would deny the defendant equal protection under the law because a nonindigent defendant could have a fitness examination without having delay attributed to him on this basis. We find no merit in these arguments as defense counsel would be obligated in any event not to proceed to trial while the question of the defendant's fitness remained unresolved. Since the examination here resulted in a finding of unfitness, the defendant could not be tried until he was found fit after a hearing. For this reason, the running of the speedy-trial period never recommenced after the court's order of a fitness examination, and the trial court erred in finding that the defendant was held in violation of the 120-day rule.

For the reasons stated in this opinion, we reverse the judgment of the circuit court of Williamson County and remand this cause for a

hearing to determine the defendant's fitness before proceeding further against the defendant in this case.

Reversed and remanded.

KASSERMAN, P.J., and KARNS, J., concur.