THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL L. SEESENGOOD, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RANDALL L. SEESENGOOD, Defendant-Appellee.

Fourth District    Nos. 4—92—0562, 4—92—0708 cons.

Argued November 9, 1993.—Opinion filed August 26, 1994.

Ronald Tulin (argued) and Thomas Glasson, both of Ronald Tulin, Ltd., of Charleston, and Daniel D. Yuhas and Lawrence Bapst (argued), both of State Appellate Defender's Office, of Springfield, for Randall L. Seesengood.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1992, a jury convicted defendant, Randall Seesengood, of theft of property having a value in excess of $10,000, a Class 2 felony (Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(a)(1)(A), (b)(5)), and acquitted him of unlawful possession of a stolen motor vehicle (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 4—103(a)(1)). Thereafter, the trial court sentenced defendant to 48 months of probation with conditions, including six months in jail followed by one year of home confinement with release for work and payment of $1,134 court costs and $3,395 restitution. In case No. 4—92—0562, defendant appeals both his conviction and sentence, alleging numerous errors occurred from pretrial discovery through trial and sentencing.

After the sentencing hearing, defendant moved for sanctions against the Woodford County State's Attorney for failure to disclose certain evidence. The court granted the motion and imposed a $1,074 sanction upon the State's Attorney. In case No. 4—92—0708, the State's Attorney appeals this sanction.

We affirm defendant's conviction and sentence and reverse the imposition of sanctions against the State's Attorney.

# I. BACKGROUND

The material in this section is not to be published pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994).

# II. ANALYSIS OF DEFENDANT'S APPEAL
## (NO. 4—92—0562)

### A. *The Trial Court's Refusal To Bar Schriver's Testimony*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### B. *The Court's Refusal To Grant Defendant a Continuance To Receive Schriver's Medical Records*

In March 1992, when the jury trial was once again ready to begin, defendant informed the trial court that he had recently received additional discovery concerning Schriver's (the State's witness who testified to committing the offense with defendant) past, including information that Schriver abused drugs and had been committed to mental health institutions on several occasions. The court granted defendant's motion for a hearing to determine Schriver's competency to testify, but denied defendant's motion for continuance to obtain Schriver's mental health records, ruling that the discovery rules did not require disclosure of the mental health records of a State's witness. The court further stated that it would not continue this case for more than a week to obtain these records, and because the parties could not obtain these records within that time, they agreed to go forward with the trial. The jury was then selected, impanelled, and sworn.

At Schriver's competency hearing, Schriver testified that he had been in a mental health facility several times and diagnosed as schizophrenic. He had never been discharged from counseling for his mental health conditions, but had simply stopped going. Schriver was also institutionalized on three occasions for attempting suicide. He had run away from the hospital on two occasions. After hearing Schriver's testimony, the court ruled that he was competent to testify.

On appeal, defendant argues that the trial court erred by failing to grant a continuance to allow him to obtain additional mental health records on Schriver from various mental health institutions. Defendant also asserts that he needed the continuance to review supplemental discovery received approximately a week before trial. Although we conclude that defendant has waived this argument, we also disagree with it on the merits.

■ Defendant alleges that the trial court ordered the State to dis-

close Schriver's psychiatric records, but provides no citation to the record to support this claim. Our review of the 1,300-page record reveals no such order. Furthermore, defendant cites no authority that requires the State to disclose such records. Accordingly, we find these arguments waived. 134 Ill. 2d R. 341(e)(7); *People v. Hood* (1991), 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230.

Moreover, we hold on the merits that the trial court did not err by denying this continuance. In *People v. Fonville* (1987), 158 Ill. App. 3d 676, 689, 511 N.E.2d 1255, 1264-65, this court stated as follows:

> "The granting or denying of a motion for a continuance *** is within the sound discretion of the trial court, and will not be disturbed absent clear abuse. [Citation.] *** A court on review must *** consider whether the evidence would be material to the case or might affect its outcome, and whether defendant has been prejudiced in his right to a fair trial."

Accordingly, in order for the trial court's denial of defendant's motion for continuance to constitute an abuse of discretion, we must conclude that granting the continuance would have affected the outcome of this trial or that defendant was prejudiced by the failure to grant the continuance. Because the trial court permitted defendant to present evidence concerning Schriver's prior mental health commitments and drug abuse, this record fails to show that defendant was prejudiced by the court's denial of a continuance or that the outcome would have been affected. Moreover, defendant has failed to demonstrate any prejudice amounting to anything close to plain error.

### C. *The Court's Dismissal of the First Jury*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### D. *Use of Identification Based Upon Photographic Lineup*

Defendant next argues that the trial court erred by denying his motion to suppress Officer Morgan's testimony identifying him, pointing out that the police improperly conducted a post-indictment photographic lineup while he was in custody in another county. Defendant cites *People v. Holiday* (1970), 47 Ill. 2d 300, 307, 265 N.E.2d 634, 637, for the general proposition that photographic lineups are not favored when other methods of identification, such as in-person lineups, are feasible.

Morgan testified both at the suppression hearing and at trial regarding the circumstances of his observation of defendant. Morgan stated that after he pulled over the truck towing the soil finisher, he

and the two people from the truck exited their vehicles. He recalled that as he talked with them, they were illuminated by the bright headlights of his squad car, the squad car's overhead lights, his light bar, and lights from the well-lit parking lots of two nearby fast-food restaurants. Morgan also noted that the area was illuminated by the "very large glow" from a nearby, very well-lit maximum security prison. Morgan had no difficulty in observing defendant and was certain of his identification, identifying defendant as soon as he saw the nine photos included in the photo lineup.

The State contends that in *People v. Curtis* (1986), 113 Ill. 2d 136, 144-46, 497 N.E.2d 1004, 1008, the supreme court departed from its holding in *Holiday*. The issue in *Curtis* was whether allowing evidence of an identification based upon a photographic lineup that used a photo of a prior unconstitutional lineup constituted reversible error. The *Curtis* court held that because the police can use photos of suspects to identify possible perpetrators, they could also use photos of more than one suspect, including one taken of a lineup. Because in-person lineups are accurate and probative, the court believed that the police would not undercut a defendant's rights by routinely foregoing a witness' actual presence in favor of a photo lineup. *Curtis*, 113 Ill. 2d at 145, 497 N.E.2d at 1008.

■ Thus, after *Curtis*, a *per se* rule no longer exists against the use of photographic lineups when a defendant is in custody and an in-person lineup may be feasible. Furthermore, as in this case, defendant was in custody in another county on a different charge. After considering all factors regarding Morgan's identification testimony, we hold that the trial court did not err by denying defendant's motion to suppress that testimony. In so holding, we agree with the views expressed in *People v. Duarte* (1979), 79 Ill. App. 3d 110, 119, 398 N.E.2d 332, 340, where the court wrote the following:

> "Although our supreme court has expressed its disapproval of the use of photographs when a suspect is in custody and a lineup is feasible [citations], the court did not establish a per se rule prohibiting the use of photographs under these circumstances. Rather, the court's position was that such practices are undesirable as they carry with them implications regarding the genuineness of the identifications which follow. Those implications may dissipate under the totality of the circumstances, particularly where the independence of the in-court identification is established."

Defendant additionally challenges this photo lineup based upon Morgan's failure to report that defendant had a mustache. Defendant also notes that Morgan described defendant as having a heavy build.

At trial, defendant had a mustache and was described as having a medium build. However, failure to mention that a suspect had a mustache is not fatal. (See *People v. Williams* (1975), 60 Ill. 2d 1, 11, 322 N.E.2d 819, 825.) Additionally, Morgan testified that defendant was wearing baggy, military-style fatigues at the time of their encounter. Accordingly, we conclude that neither of these discrepancies requires suppression of the photo lineup identification or bars Morgan's in-court identification.

### E. *Use of Prior Convictions for Impeachment*
The material in this section is not to be published pursuant to Supreme Court Rule 23.

### F. *Legal and Logical Consistency in Verdicts*
The material in this section is not to be published pursuant to Supreme Court Rule 23.

### G. *State's Hearsay Objections*
When defendant testified at trial, the following exchange took place between him and his defense counsel:

"Q. [Defense counsel:] Can you tell the ladies and gentlemen of the jury when it was that you first saw this soil finisher that was on your dad's property?

A. [Defendant:] Sunday morning.

Q. That would have been what date if we're talking about April 19?

A. 21st.

Q. Okay. And tell us, did Ron Schriver live at your home during April 19th or thereabouts?

A. No, sir.

Q. Did he stay at your home on the morning of April 20th?

A. No, sir.

Q. Did you have a conversation with [Schriver] regarding the soil finisher?

A. Yes, sir.

Q. Did he call you or did you see him in person?

A. He called me [on] the 20th. I came in for lunch, and while I was in there eating lunch the phone rang and it was [Schriver]. He wanted to know—

[Prosecutor]: Objection, Your Honor. Hearsay.

THE COURT: Sustained."

The court then conducted a hearing regarding this ruling outside the presence of the jury at which defendant made the following offer of proof:

"Q. [Defendant], you had a telephone conversation with Ronald Schriver on April 20th, '91; is that right?

A. Yes, I did.

Q. And would you tell the court what Ronald Schriver said to you and what you said to him?

A. He asked me if I seen the soil finisher down at the Jorgensen place, and I said, 'I haven't yet but I heard it was down there.' And he wanted to know if we—if we was interested in it. And I says, 'For one thing,' I said, 'it's too large for us.' And I said that 'We're not interested in it.' And he says, 'Go ahead and try it.' He says, 'If you like it,' he says, 'I can make a good deal for you.'

Q. Okay. Was that the end of the conversation?

A. Yes, sir."

After hearing this offer of proof, the court again ruled this testimony constituted inadmissible hearsay.

On appeal, defendant argues that the trial court improperly sustained the State's objection to his offer of proof because the offered testimony was not hearsay. He claims that the exclusion of this testimony denied him a fair trial, requiring this court to reverse and remand for a new trial. The State responds that the offered evidence was hearsay because it was an out-of-court statement offered to prove the truth of the matter asserted. In the alternative, the State argues that even were it not hearsay, the exclusion of the testimony was harmless. For the reasons that follow, we hold that the trial court erred in excluding this testimony, but conclude that the error was harmless.

The admission of evidence lies within the sound discretion of the trial court, and we will not reverse that court's evidentiary rulings absent a clear abuse of discretion. (*People v. Hampton* (1993), 249 Ill. App. 3d 329, 337, 618 N.E.2d 923, 928.) Hearsay is an out-of-court statement offered to establish the truth of the matter asserted in the statement. (*People v. Simms* (1991), 143 Ill. 2d 154, 173, 572 N.E.2d 947, 954.) Testimony regarding an out-of-court statement offered for a purpose other than to prove the statement's truth is not hearsay. (*Simms*, 143 Ill. 2d at 173, 572 N.E.2d at 954.) One such purpose is to show the effect the statement had on the listener or to explain why the witness acted in a particular way. *People v. Jenkins* (1989), 190 Ill. App. 3d 115, 131, 545 N.E.2d 986, 997.

■ It is clear that defendant offered this testimony to show why he believed the soil finisher was on his father's land. He was not seeking to prove through Schriver's statements the substance of those statements—that Schriver was selling the soil finisher to obtain a commission. Instead, this testimony was offered to show that

Schriver made the statement and the effect of those statements upon defendant. In other words, the statements were not offered to prove that Schriver could give defendant a "good deal" on the soil finisher, but to show why defendant acted as he did. Thus, we agree with defendant that this testimony does not constitute hearsay and should have been admitted into evidence. See *Jenkins*, 190 Ill. App. 3d at 131, 545 N.E.2d at 997.

However, our analysis does not end with that conclusion. We still must determine whether defendant was prejudiced as a result of this error. If the error in excluding this evidence was harmless, reversal would not be appropriate. See *People v. Tye* (1990), 141 Ill. 2d 1, 18, 565 N.E.2d 931, 939.

The trial court permitted defendant to testify to the following: (1) Schriver called him; (2) he believed Schriver was working for a farm implement dealer and would receive a commission for selling the soil finisher; (3) it was normal practice for implement dealers to loan farmers equipment to decide whether they wanted to purchase it; (4) defendant first saw the soil finisher at the Jorgenson place, did not know where it came from, and when Schriver delivered it, did not know it was stolen; (5) defendant never tried to find where the soil finisher came from "because after [Schriver] called me that time and told us to try it and use it, we never did ever hear anything out of him after that"; and (6) defendant first learned the soil finisher was stolen when the police came looking for him.

This record shows that defendant was allowed to testify to essentially the same matters as contained in his offer of proof. Defendant fully communicated to the jury the substance of his conversation with Schriver, as well as its effect on his allegedly innocent state of mind. Under these circumstances, we deem harmless the court's error in refusing defendant's offer of proof. *Tye*, 141 Ill. 2d at 18, 565 N.E.2d at 939.

## H. *Jury Instructions*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

## I. *Reasonable Doubt*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

## J. *Sentence*

The material in this section is not to be published pursuant to Supreme Court Rule 23.

## K. *Prosecutor's Relationship to State Witness*

Defendant next complains that the trial court erred in denying his supplemental post-trial motion for a new trial. In that motion, defendant asserted that (1) after trial, the State's Attorney advised him "that the owner of the soil finisher was [the State's Attorney's] uncle"; and (2) this information was not previously made available but should have been. The court denied defendant's motion.

■ The State responds that defendant waived any alleged impropriety by his failure to cite authority to provide a reasoned argument in support of his claim of prejudice. (See 134 Ill. 2d R. 341(e)(7).) We agree. (See *People v. Humphries* (1994), 257 Ill. App. 3d 1034, 1043, 630 N.E.2d 104, 110.) Moreover, we agree with the State on the merits that no such pretrial disclosure was required (see *People v. Harris* (1989), 129 Ill. 2d 123, 152, 544 N.E.2d 357, 369 (State required to disclose only clearly exculpatory material)) because the relationship would not have disqualified the State's Attorney from participating in the case. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 496, 437 N.E.2d 804, 811 (special prosecutor required only if prosecuting attorney is interested as a private individual or is a party to the action).) This record shows no prejudice to defendant.

## L. *Credit for Time Served*

Finally, defendant contends that he is entitled to 18 days' credit for the time he served in the Edgar County jail waiting for the bond on the warrant issued in this case (as well as three other warrants) to be reduced. At that time, defendant was being held in Edgar County on a warrant in a different case arising out of Edgar County. He claims that when he attempted to satisfy the bond on the Edgar County warrant, he was told that he would also have to satisfy the bond on the warrant for this offense, as well as the others. Therefore, defendant argues that he should be credited with those 18 days because he could not have been released without posting the bond on the warrant issued in this case.

■ However, section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—7(b)), requiring credit for time served in pretrial detention, only applies when the person is confined as a result of the offense for which the sentence was imposed. (*People v. Jones* (1993), 241 Ill. App. 3d 262, 264-65, 608 N.E.2d 1331, 1333; *People v. Nicholson* (1991), 213 Ill. App. 3d 765, 767-68, 572 N.E.2d 1188, 1190.) Because this record shows that defendant was never served with a warrant arising out of this offense, we agree with the State that he was not held in connection with these charges and should not be credited for the time served on the other warrants.

## III. ANALYSIS OF STATE'S ATTORNEY APPEAL
### (NO. 4—92—0708)

In case No. 4—92—0708, the Woodford County State's Attorney (John Huschen) appeals the trial court's imposition of sanctions against him in the amount of $1,074 for his failure to timely disclose the existence of the tape-recorded interview between Bigelow and Schriver. He argues that Supreme Court Rule 415(g) (134 Ill. 2d R. 415(g)) governs the imposition of sanctions for a discovery violation in criminal cases and requires a *wilful* violation in order to impose sanctions. He argues that this record does not reveal any wilful violations of discovery orders, pointing out that (1) he timely disclosed to defendant a summary of Schriver's statement concerning the offenses at issue in this case; (2) defendant admitted receiving this report and used it at trial; and (3) most important, the record establishes that he did not know of the existence of the tape-recorded statement because the officer who made the tape had told no one of its existence.

■ Defendant argues that under Supreme Court Rule 219 (134 Ill. 2d R. 219), the trial court may properly subject counsel to sanctions for violations that occur without substantial justification, and that the court should require the offender to pay the aggrieved party's reasonable expenses. However, Supreme Court Rule 219 only applies in civil cases. At oral argument before this court, defendant contended that this matter constitutes a civil appeal and, therefore, the civil rules apply. We disagree. The trial court imposed sanctions for discovery violations in a criminal case, and accordingly only Rule 415 (134 Ill. 2d R. 415) applies.

Under Supreme Court Rule 415(g)(i), the trial court may order a party to permit discovery of material and information not previously disclosed, grant a continuance, exclude such evidence that was not disclosed, or enter other such other orders it deems necessary to remedy a discovery violation. (134 Ill. 2d R. 415(g)(i).) In this case, the trial court fashioned a remedy to deal with the discovery violation at issue consistent with Rule 415(g)(i). However, Rule 415(g)(ii) provides that a "[w]ilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court." (134 Ill. 2d R. 415(g)(ii).) Therefore, the State's Attorney correctly notes that absent a wilful violation of discovery, the trial court cannot impose sanctions on counsel.

■ The imposition of sanctions for wilful violations of discovery orders is an important matter and should be accompanied by findings of fact. In the present case, the record does not contain any facts which support the sanction. On the other hand, the record does clearly demonstrate that the existence of the tape recording was un-

known until the time of trial. As soon as it was discovered, it was turned over to the defense. Although there could have been—and should have been—a better flow of information from the investigators to the State's Attorney, deficiencies in this flow of information do not constitute the prosecutor's *wilful* violation of discovery orders. We hold that the trial court erred by imposing civil sanctions on the State's Attorney.

## IV. CONCLUSION

For the reasons stated, we affirm defendant's conviction and sentence, and we reverse the trial court's imposition of sanctions against the State's Attorney.

No. 4—92—0562, Affirmed.
No. 4—92—0708, Reversed.

McCULLOUGH, P.J., and LUND, J., concur.