THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIDNEY FOSTER, Defendant-Appellant.

Fourth District    No. 4—93—0201

Opinion filed March 27, 1995.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 1992, a jury convicted defendant, Sidney Foster, of two counts of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8)), and the trial court later sentenced him to concurrent terms of four years in prison on each count. Defendant appeals, arguing that the trial court deprived him of a fair trial by refusing to permit him to present his affirmative defense of self-defense because he had failed to comply with a discovery order.

We reverse and remand.

## I. BACKGROUND

In August 1992, the State charged defendant with two counts of aggravated battery, alleging that while defendant was at a gas station in Decatur, which constituted "a public place of accommodation," he "knowingly made physical contact of an insulting or provoking nature with Steve Woodward, in that he grabbed Steve Woodward on the arm, and spit on Steve Woodward" (count I), and he "knowingly caused bodily harm to Steve Woodward, in that he bit Steve Woodward on the chest" (count II). Thereafter, defendant's attorney entered his appearance, and on September 3, 1992, the trial court conducted a preliminary hearing, finding probable cause to believe that defendant committed these offenses. The court then arraigned defendant, who entered a not guilty plea and requested a jury trial.

The trial court also allotted the matter for jury trial in November 1992 and entered a pretrial discovery order on both the State and the defense. The record shows that the court served a copy of this order

on defendant in open court. The order directed, in part, that within 15 days, defense counsel "shall list any defenses which he intends to make at a hearing or trial, including affirmative defenses[,] non-affirmative defenses, alternative[,] and inconsistent defenses." The order further directed defense counsel to furnish the names and last known addresses of persons he intended to call as witnesses, together with their relevant written or recorded statements.

The State filed its answer to the pretrial discovery order in open court immediately after the court entered this order. The State's answer recited that the State would call the individuals whose names appeared in the police reports being furnished to defendant and incorporated within the State's answer (although we note that those police reports were not made part of the common law record). The State's answer also included a list of witnesses to statements defendant made at the gas station.

In October 1992, the trial court conducted a trial readiness call of cases allotted for the November jury trial term, and on motion of the defendant, without objection by the State, trial of this case was continued until December 7, 1992, and for a trial readiness call on November 23, 1992. At that trial readiness call, both the State and defendant announced ready for trial and the court confirmed the trial allotment.

On December 15, 1992, when the trial court called this case for trial, the State objected to any affirmative defenses that defendant might wish to announce on the morning of trial. In support of its objection, the State pointed out that despite the discovery order the court had entered over three months earlier, defense counsel had filed no discovery response. The court then asked defense counsel to respond to the State's objection, and the following discussion took place:

"[Defense counsel]: I think he has a right of self-defense and I think from the police reports in the case it is obvious that—

THE COURT: Are you familiar with the discovery order entered in the case? Paragraph one states the defendant shall list any defenses which he intends to make at a hearing or trial, including affirmative defenses, non-affirmative defenses, alternative[,] and inconsistent defenses.

[Defense counsel]: I am aware of that, your Honor.

THE COURT: Anything else?

[Defense counsel]: No.

[Prosecutor]: I would just point out that the case was continued once on the defendant's motion and there's no excuse for not providing this information. I would request that he be debarred

[*sic*] from presenting any defenses. That's the only way this is going to stop, your Honor.

THE COURT: [Defense counsel].

[Defense counsel]: Your Honor, I think it's quite evident from the police reports that the defense is self[-]defense. It just doesn't seem to me to be the sort of matter that needs to be included in a formal statement to the prosecution that the defendant intends to plead self[-]defense.

THE COURT: Well, discovery orders, or any orders must have some meaning or else it becomes insignificant. In this case there is a pre-trial discovery order directing both parties to file discovery \*\*\*. The People have filed their answer. There is no answer on file by the defendant. Orders, as I say, must have some meaning or we may as well do away with them. There is no notice of any defense on file. Therefore, the People's motion I believe is well taken. The defendant is barred of presenting a defense.

[Defense counsel]: I request a continuance.

THE COURT: For what purpose?

[Defense counsel]: Well, the defense of the defendant is that he is going to claim self[-]defense. We need—

[Prosecutor]: We object, your Honor. The defendant has been given one continuance. We have a witness who is here from Peoria. He is approaching eighty years old, sitting in our office, ready for trial.

THE COURT: Motion by the defendant for continuance. Objection by the People. Motion denied."

The case proceeded to jury trial, and the State called Woodward and three other persons present at the gas station during the altercation to testify. Their testimony essentially established that Woodward was in the gas station to make a purchase when defendant, whom he did not know, grabbed his arm and muttered something. Defendant smelled of alcohol, walked uneasily, and did not speak clearly. Woodward told defendant to stay away from him, but defendant threatened to fight Woodward and spit on him. Defendant approached Woodward with clenched fists and a fight ensued in which Woodward knocked him down. Defendant got up and struck at Woodward, who grabbed defendant in a headlock. Defendant then bit Woodward on his chest.

After the State rested, defendant presented no evidence. At the jury instruction conference, defense counsel objected to the State's instructions because they contained no reference to self-defense. The trial court overruled the objection on the ground that the record contained no evidence of self-defense. Defense counsel acknowledged that was true, but explained it was because the court prohibited de-

fendant from presenting his self-defense claim. Counsel added the following: "I have abided by the court's ruling on that issue. I am not about to put him up there and have a problem with disobeying the court's rulings." In response, the court explained again that defendant was "barred from presenting any evidence in the nature of a defense because he didn't comply with the court's order of discovery, not because of anything the defendant has done beyond that."

The jury convicted defendant of both counts, and he filed a posttrial motion alleging that the trial court erred in refusing to allow him to present evidence that he acted in self-defense. The court denied his motion and proceeded directly to the sentencing hearing. Defendant testified at that hearing that Woodward initiated the fight at the gas station by complaining about defendant's parking his bicycle near the gas pumps. Defendant further claimed that Woodward repeatedly used racial slurs and started fighting with him. According to defendant, he struck back against Woodward only in self-defense. The trial court sentenced defendant to four years in prison, and this appeal followed.

## II. ANALYSIS

Defendant concedes that the correct sanction to be applied for a violation of the criminal discovery rules lies within the trial court's discretion. (See *People v. Stack* (1994), 261 Ill. App. 3d 191, 198-99, 633 N.E.2d 42, 47.) However, defendant contends that the trial court here abused its discretion by imposing the most severe sanction available, which was to completely prohibit him from presenting his claim that he acted in self-defense.

Supreme Court Rule 415, which regulates discovery in criminal cases and sets forth the sanctions available for violations of discovery orders, reads as follows:

"(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.

(ii) Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court." 134 Ill. 2d R. 415(g).

On appeal, defendant does not challenge the trial court's determination that he did not comply with the discovery order. Instead, he challenges the sanction the trial court imposed, claiming that it was too severe under the circumstances of this case. In response, the

State simply argues that the trial court did not abuse its discretion by choosing the sanction of completely barring defendant's sole defense.

We find singularly unsatisfactory that our only options are to either affirm or reverse the specific sanction imposed in this case. On one hand, the record certainly suggests that defense counsel simply disregarded the trial court's discovery order and was prepared to go to trial without ever responding to it. Thus, we sympathize with the trial court's frustration at this state of affairs, particularly in view of the prosecutor's unrebutted remarks which suggest compliance by defense counsel with discovery orders was an ongoing problem.

On the other hand, the trial court's action barring defendant from asserting self-defense in this aggravated battery case literally stopped him from presenting any defense for the jury's consideration. Thus, defendant correctly characterizes this sanction as the most serious that could be imposed under these circumstances.

In asking the trial court to bar defendant from presenting his claim of self-defense, the prosecutor argued that *only* by so ruling could the court stop defense attorneys' chronic failure to comply with discovery orders in criminal cases. By imposing the order it did, the court may have accepted this argument, but we do not. Instead, we believe the court had another option available that might not only have proved more effective, but also would have avoided the harsh consequences of depriving defendant of his only available defense. That option was to punish the offending attorney directly and personally, and not to impose sanctions upon his client.

We note that Rule 415(g)(ii) specifically authorizes the trial court to subject *counsel* to appropriate sanctions for his wilful violation of a discovery order. However, we cannot unduly criticize the trial court for not doing so in this case because so little precedent exists for that action in Illinois. To correct that deficiency, and because such discovery violations unfortunately continue to occur in criminal cases at the hands of *both* defense counsel and prosecutors, we take this opportunity to emphasize that the supreme court meant what it said in Rule 415(g)(ii) about imposing sanctions directly upon counsel.

█ Because Rule 415(g)(ii) speaks of a "wilful violation," a trial court should explicitly ask the counsel whom the court believes may have violated a discovery order for his explanation, if any, as to why he failed to comply with the court's order. Once the court hears counsel's response, the court should then make specific findings of fact before concluding that a wilful violation by counsel has occurred. (See *People v. Seesengood* (1994), 266 Ill. App. 3d 351, 361, 639 N.E.2d 959, 966.) If the court finds—as the record in the present case sug-

gests—a wilful violation by counsel, then the court should consider two *unrelated* paths of action by asking both of the following questions: (1) how important and necessary is the new evidence being offered in violation of the discovery rules, and if the court admits it, how prejudicial and surprising will it be to the other side? And, (2) what personal sanction, if any, should the court impose upon counsel so as to both punish and deter wilful violations of its discovery order?

■ Applying the first part of the above analysis to the present case, this record suggests that the State was not particularly surprised by defendant's self-defense claim—we note that the police officer who testified at the preliminary hearing stated defendant claimed to have acted in self-defense—and the prejudice from letting defendant so testify would not have been great. Given the strength of the State's case, defendant's self-defense claim looks rather weak and flimsy. Nonetheless, resolution of such claims lies within the province of the jury.

Applying the second part of the above analysis to this case, the concerns expressed by the trial court and the State about defense counsel's disregard (and therefore wilful violation) of the court's discovery order appear well-founded, and the court's action to punish and deter such conduct was needed. However, instead of barring defendant's self-defense claim, the trial court could have achieved the goals of punishment and deterrence by fining defense counsel several hundred dollars as a sanction under Rule 415(g)(ii). (Compare *Seesengood*, 266 Ill. App. 3d at 361-62, 639 N.E.2d at 965-66.) We do not believe that trial courts would need to impose many such sanctions before all counsel in criminal cases begin to treat discovery orders with the respect to which they are entitled.

In support of our holding that trial courts should always consider personal sanctions under Rule 415(g)(ii) against attorneys who willfully violate discovery orders in criminal cases, we note the views expressed by Justice Brennan in his dissent from the Court's decision in *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, approving the exclusion of a defendant's alibi witnesses as a sanction for a discovery violation:

> "In the absence of any evidence that a defendant played any part in an attorney's willful discovery violation, directly sanctioning the attorney is not only fairer but *more* effective in deterring violations than excluding defense evidence. [Citation.] The threat of disciplinary proceedings, fines, or imprisonment will likely influence attorney behavior to a far greater extent than the rather indirect penalty threatened by evidentiary exclusion. Such sanctions were available here. Rather than punishing the defendant

under Rule 415(g)(i), the trial court could have sanctioned the attorney under Rule 415(g)(ii), which provides that 'Wilful violation by counsel of an applicable discovery rule ... may subject counsel to appropriate sanctions by the court.' [Citation.] Direct sanctions against the attorney would have been particularly appropriate here since the discovery rule violated in this case places the obligation to comply with discovery not on the defendant, but directly on the attorney: providing that, upon motion by the State, a '*defense counsel* ... shall furnish the State with ... the names and last known addresses of persons he intends to call as witnesses ... .' " (Emphasis in original.) *Taylor*, 484 U.S. at 433, 98 L. Ed. 2d at 826, 108 S. Ct. at 665 (Brennan, J., dissenting, joined by Marshall and Blackmun, JJ.).

The only Illinois case our research has disclosed in which a trial court imposed a sanction on an attorney for violating a discovery order in a criminal case was this court's recent *Seesengood* decision. In *Seesengood*, the trial court imposed $1,074 in sanctions against the State's Attorney personally for his failure to timely disclose the existence of a tape-recorded interview that the State should have disclosed under the discovery order the court entered. (*Seesengood*, 266 Ill. App. 3d at 361, 639 N.E.2d at 965.) This court reversed on the sole ground that the record did not contain any facts to support the trial court's finding that the State's Attorney's discovery violation was wilful. However, we intimated no criticism of the trial court's action in directly punishing an attorney in a criminal case for a wilful violation of a discovery order, nor did we suggest in any way that the $1,000 sanction would be excessive in an appropriate case.

The record in this case contains no indication that the trial court even considered the possibility of imposing a sanction directly and personally upon defense counsel, as opposed to depriving defendant of his only available defense. We agree with the views expressed in *Cano v. Municipality of Anchorage* (Alaska Ct. App. 1981), 627 P.2d 660, 663, in the context of a defendant's request to proceed *pro se* with assistance of counsel, in which the court wrote the following:

"In the exercise of sound legal discretion, a [trial] court must consider the alternatives available to it and choose among them. When the trial court fails to recognize the alternatives from which it may choose, it cannot be said that discretion was in fact exercised."

Because the trial court did not consider the possibility of imposing a sanction directly and personally upon defense counsel, as opposed to barring defendant from presenting his claim of self-defense, we conclude that the trial court did not fully and appropriately utilize its discretion when confronted with defendant's discovery viola-

570

tion. (See *Stack*, 261 Ill. App. 3d at 199, 633 N.E.2d at 47.) Accordingly, we reverse and remand for a new trial, and we do so in the hope that by this decision, we have made clear to trial courts what additional alternatives are available when exercising their discretion regarding discovery violations.

## III. CONCLUSION

For the reasons stated, we reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

KNECHT, P.J., and GREEN, J., concur.